Charles Edward HENDRICKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 63063.

Court of Criminal Appeals of Texas, Panel No. 1.

Nov. 10, 1982.

Danny Duane Pitzer, Duncanville, for appellant.

Henry M. Wade, Dist. Atty., Stanley Keeton, Mike Keasler and Sue Lagarde, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ROBERTS, TOM G. DAVIS and W.C. DAVIS, JJ.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for burglary of a building. Upon finding that appellant had previously been convicted of murder with malice, the jury set punishment at life imprisonment. See Tex.Penal Code Ann., § 12.42(b).

Appellant submits nine grounds of error, none of which challenge the sufficiency of the evidence.

■ Initially, appellant complains that the trial court abused its discretion in denying him a continuance to secure an eyewitness for rebuttal purposes. However, the contemplated eyewitness, one Mr. Blackford, apparently would not have rebutted anything: a prosecution report synopsis of what he would say indicates that he saw two males [1] inside the Setliff Tire Company on the night of the offense and called the police. Testimony to that effect would certainly not have rebutted the testimony of

---

1. The other individual, one Prince Elvin Camp, was not tried with appellant. The State called

the arresting officer that when he arrived on the scene, appellant was pulling a tire out of the door.

Moreover, at a hearing on appellant's motion for a new trial, the court ordered the State to give appellant Mr. Blackford's address so that he might be subpoenaed to appear the next day. We assume that the State complied, but the record does not reveal whether appellant then tried to subpoena Blackford. Without any hint that Blackford's testimony might have helped appellant's cause, we cannot conjecture that the prosecution report synopsis was inaccurate. The first ground of error is overruled.

■ Second, appellant argues that the court erred in failing to order the State to disclose at trial the names of all police officers present at the scene as well as the correct name and address of Mr. Blackford.[2] As to Blackford, there was no error, for the reasons just discussed. As for the police officers, we note first that the State is generally not required to reveal the names and addresses of witnesses other than those it intends to call at trial. *See Young v. State,* 547 S.W.2d 23 (Tex.Cr.App.1977).

■ In this case, while the State relied only on the officer who arrested appellant, the prosecution indicated that another officer involved, Officer Nolan, was in court and was available for appellant to call. Appellant did not call him, and made no effort at the hearing on his motion for a new trial to secure the testimony of any police officer. As far as we can determine, the only reason appellant sought disclosure of the officers' identities was to discover more about Blackford. Accordingly, the second ground of error is also overruled.

■ Next, appellant contends that the court should have forced the State to disclose the prosecution report referred to earlier because it contained exculpatory evidence. The record shows that prior to trial appellant's counsel was given an opportunity—if hurried and circumscribed[3]—to read this report. His memory failed him as to Mr. Blackford, for, as we have said, nothing in the report suggests that Blackford's testimony would have helped appellant's cause. However, appellant also urges that the report is exculpatory in that it nowhere indicates that any officer ever saw him inside the building. According to appellant, the report thus "controverts" the testimony of the arresting officer, S.M. Cedarwall.

We point out first that Officer Cedarwall did not himself prepare the report. In the absence of any showing that he even knew who did, the fact that the author of the report omitted part of what Cedarwall could testify to does not in any way impugn Cedarwall's credibility. Second, appellant was given a copy of Cedarwall's own arrest report. If this report had failed to mention that Cedarwall saw appellant reaching inside the building, we assume defense counsel would have elicited that fact on cross-examination. And, finally, *Ridyolph v. State,* 503 S.W.2d 276 (Tex.Cr.App.1973), relied on by appellant, is not even remotely

only two witnesses: the owner of the building and the officer who arrested appellant.

2. The true name of this eyewitness was a mystery at trial, with various references to "Mr. Blackman," "Mr. Blackbyrd," "Mr. Blackwood," and "Mr. Blackford." Even now the State in its brief refuses to choose between "Blackman" and "Blackford," but since the prosecution report refers to "Blackford," so he shall be.

3. Appellant's counsel testified without contradiction that in lieu of an examining trial, he was permitted a cursory reading of the report, but was asked not to write down the names and addresses of any witnesses. While counsel was, of course, not entitled to the report under Article 39.14, V.A.C.C.P., the niggardly prosecutorial approach to discovery here seems utterly pointless. If the prosecutor acted from concern for the safety or comfort of the witnesses in imposing a copying prohibition, he obviously forgot that memory can serve as well as a pencil. Though the issue is not before us now, discovery is not to become an exercise in speed reading nor is its utility to vary according to the breadth of defense counsel's recall.

in point. This is not a case where a clearly exculpatory statement in a report was suppressed, cf. *Ridyolph,* supra, but a case where inculpatory testimony was not included in a report by someone other than the witness. The trial court did not err.

■ The remaining grounds of error allege improper jury argument, at both stages of the trial. We begin by setting out the argument complained of in the fourth ground of error:

"You know, in listening to his argument I'm reminded of one of the old lawyers advise [sic] to the young one who said son, when you're arguing a case if the facts are against you pound on the law and if the law is against you pound on the facts, and if both are against you pound on the table.

"MR. PITZER: *We object to the prosecutor making the personal opinion if the facts are against you.*

"MR. KEASLER: Judge, I'm simply answering his argument.

"THE COURT: Overruled. Go ahead."

\* \* \* \* \* \*

"MR. KEASLER: And if both are against you pound on the table. And not all the table pounding in the world that Mr. Pitzer can do is going to change the facts in this case.

"Now, he is an able lawyer. His client has been well represented here. And I think it's a tribute to his ingenuity that he can get up here and say anything at all.

"MR. PITZER: *We object to the prosecutor saying that it's ingenuity that the counsel for the defendant can get up and say anything at all.*

THE COURT: Overrule the objection."

\* \* \* \* \* \*

"MR. KEASLER: At any rate all of his wishing will not change the facts of the case. Now, it cannot come to any great surprise to you that he is dissatisfied with the states case. You hardly expect him to be.

"MR. PITZER: *Once again, Your Honor, we will object to the prosecutors stating that my job is to be dissatisfied with the State's case.*

"THE COURT: Overruled the objection.

\* \* \* \* \* \*

"He says there is a lot of confusion out there that night. I submit it's only confusion in Mr. Pitzer's mind if it's confusion any place. Because from the evidence, the evidence is so clear, so convincing, so unequivocal, so overwhelming that it just might occur to you what—

"MR. PITZER: Your Honor—

"MR. KEASLER: And let's let him—

"MR. PITZER: *We object to the prosecutor saying it is so clear, so unequivocal, so overwhelming, Your Honor.*

"THE COURT: Overrule the objection." (Emphasis added)

■ This ground of error is multifarious. *See* Article 40.09, § 9, V.A.C.C.P. Overlooking that, we find no reversible error. Appellant did not object to the statement that the law was against him, and the reference to the facts was a permissible comment on the weight of the evidence rather than a personal opinion. *See Miller v. State,* 566 S.W.2d 614, 620–21 (Tex.Cr.App. 1978); *cf. Villalobos v. State,* 568 S.W.2d 134 (Tex.Cr.App.1978). As for the other three comments, the objection in each case was too general. Merely objecting and repeating the prosecutor's remark does not alert the trial court to the reasons for the objection. *See Lamberson v. State,* 504 S.W.2d 894, 896–97 (Tex.Cr.App.1974); *Patterson v. State,* 509 S.W.2d 857, 860–61 (Tex.Cr.App.1974).

The fifth ground of error is also multifarious, setting forth two instances of alleged impropriety:

"Mr. Pitzer tells you and he knows the name apparently of someone Blackman or

Blackwood or something like that who supposedly was out there. Well, I think from the evidence that you have here before you and I think as both of them told you in the larger panel, both sides have *the right to subpoena power*. And don't you know that if there was *one single witness* that could come down here and *exonerate* this man down here don't you know Mr. Pitzer would have him here.

"MR. PITZER: Your Honor, we will object to counsel making that argument. I did everything under my power to subpoena that witness and I couldn't get the address. We will object to the jury being told that.

"THE COURT: Overrule the objection. Go ahead.

\*    \*    \*    \*    \*    \*

"MR. KEASLER: Now at any rate, he faults us for not bringing down *repetitious* witnesses that are the officers that arrested Prince Elvin Camp inside the building. Well, *what does that have to do with this case. Nothing.* I think from the evidence the person that saw this, that saw the—

"MR. PITZER: We will object to the prosecutors saying the officers that arrested Prince Elvin Camp had nothing to do with this as being a statement of personal opinion of the prosecutors and ask the jury be instructed to disregard that testimony.

"THE COURT: Overrule the objection. Go ahead." (Appellant's emphasis)

**4.** As noted earlier, appellant had no right to compel disclosure of the witness' name, although he tried to do so before trial *via* a timely discovery motion. Moreover, in view of the State's unreasonable stance in conducting what might be called peekaboo discovery (see footnote three, supra), we will not say that appellant failed to exercise due diligence because his counsel did not memorize Blackford's name and address.

**5.** Appellant may mean that the two remarks come to the same thing, and perhaps they do. But if this is an attempt to synthesize two

■    The first remark was improper insofar as it concerned the right to subpoena, for, while the prosecution may normally comment on the failure of the defendant to call a witness, it may not do so where the witness is unavailable through no fault of the defendant. *Rodgers v. State,* 486 S.W.2d 794, 797 (Tex.Cr.App.1972). We do not see how appellant could have secured Blackford's attendance in the face of the State's adamant refusal to even disclose his true name, and appellant's trial objection was thus well taken.[4]

In his brief, however, appellant's ground of error is that "the trial court erred in overruling appellant's objection to the prosecutor's injection of unsworn testimony of his personal knowledge and opinion that no witness could exonerate appellant at the guilty/innocence [sic] stage of the trial." (Emphasis added) This objection was not made at trial, and the objection that was made—that the State could not, in effect, hide a witness and then blame appellant for not calling him—is not pursued on appeal. As a result, neither complaint is before us.

■    With respect to the second remark, concerning "repetitious" witnesses, we do not understand how appellant's ground of error, as framed, applies. From appellant's brief, it appears that the thrust of his complaint goes to the "exonerate" remark, which, in context, clearly refers to Blackford. The prosecutor's opinion of the relevance of the other officers seems a separate matter.[5] In any event, this comment was invited by earlier defense argument about a "pat story" coming from only one officer.

remarks, it is a good example of the purpose of the multifarious prohibition in Article 40.09, § 9, V.A.C.C.P. Multifariousness should not be an appellate flytrap to ensnare unwitting defense counsel, and the court will consider multifarious complaints which can be identified and understood. *Schoter v. State,* 638 S.W.2d 902 (Tex.Cr.App.1982). On the other hand, just as no rights are denied by insisting on a specific objection at trial, this court does not ask too much in requiring litigants to clearly delineate their complaints rather than leave us to puzzle over what is meant.

**938**

*See Howard v. State,* 505 S.W.2d 306, 310 (Tex.Cr.App.1974). The fifth ground of error is overruled.

■ In another ground of error, appellant objects to a remark made at the punishment stage: "I would suggest to you it's a reasonable deduction from the evidence he's saying if you're silly enough to be lenient that's your problem not mine." According to appellant, this was a comment on his failure to testify. We do not see how. Just before this remark, the prosecutor had argued that despite a previous "lenient" sentence, appellant was "right back on the streets committing another crime," thus "flaunting the leniency." The prosecutor's comment thus referred to what appellant was saying by his conduct before the trial, and not to his silence in the face of that conduct. Appellant's invocation of *Lankford v. State,* 156 Tex.Cr.R. 113, 239 S.W.2d 394, 395 (1951) ("If I had done it ... I would come up here and say 'Yes, I did it.... Have mercy on me' ") only makes it clear there was no error.

The previous "lenient" sentence—twenty years for murder with malice—is also the basis of another complaint. At one point, the prosecutor who concluded for the State told the jury:

> "Now, let's shuck down the corn and talk about it. You know what about this defendant indicates he ought to receive a life sentence. You know it really offends me in a way just backing up for a minutes [sic]. I think it's terribly unfair and unjust that—and Mr. Pitzer I think is doing a fine job and he's representing his client well. But to get up here and throw leniency back in our faces, say the District Attorney [sic] office decided that this is what this is worth and recommended 20 years on the murder. To throw leniency back in our faces I don't think is really quite fair. And I don't think it's anything to reward him for.

> "But what about the facts show that he's deserving of a life sentence. Well, we know as Mrs. LaGarde said he doesn't really learn very well from leniency. He was shown it before. You might say it was lenient to get 20 years for murder with malace [sic], you might say that.

> "MR. PITZER: I will object to the prosecutor saying it was lenient for the man to have gotten 20 years before. You—that is assuming facts not in evidence and testified to the jury.

> "THE COURT: Overruled the objection.

> "MR. KEASLER: I'm simply answering his argument.

> "You might say that that's a lenient sentence. You might say that 20 years for placing a person in fear or robbery, robbery[6] taking peoples money from them by force might be lenient. You might say so.

> "You might say according to him quote serving 6 years of a 20 year sentence is lenient. And I submit to you its and if he says he's been rehabilitated by serving that little of time I submit to you an equally reasonable deduction from the evidence is that he knows how to do his time down there and do it well and get out as quickly as he can. I think that's an equally reasonable deduction from the evidence.

> "MR. PITZER: I object to the testimony outside the record.

> "THE COURT: Overrule the objection."

Noting that the first objection was not timely, we observe that Mrs. Lagarde was the prosecutor who commenced the closing arguments. Appellant did not object when she asserted that "it's a reasonable deduction that a 20 year sentence ... is certainly leniency."[7] Thereafter, defense counsel in his own argument delved extensively into

---

**6.** The robbery apparently grew out of the same transaction as the murder.

**7.** Appellant did object to one of her later references to leniency, but on the ground that it was

the matter of the prior sentence. Disagreeing that the sentence was lenient, he urged the jury to remember that appellant was only on trial for burglary and then remarked, "I don't know whether the District Attorney is saying this is a life case because back [in] 1971 he didn't get enough time for that or what." The court sustained the State's objection that counsel was misstating the law because the jury could consider appellant's past in deciding punishment.

 We believe that whether the prior sentence was "lenient" was irrelevant and should not have been discussed. Instead of objecting when the matter was first broached, however, counsel sought to capitalize on it by his suggestion that the State was trying to make up for a bad bargain in the past. Given that, we find no reversible error. *See Grant v. State,* 472 S.W.2d 531, 534 (Tex.Cr.App.1971).[8]

Another ground of error is that the prosecution impermissibly bolstered the testimony of Officer Cedarwall: "You have the testimony of Mr. Cedarwall. Clear convincing. An officer trained to observe going on [sic]. What did he see when he came." The State argues that it is "common knowledge that police officers are trained to develop their powers of observation." Without deciding on this, we find that the record shows that Cedarwall had five years' experience. If there was error, it does not merit reversal. *Kerns v. State,* 550 S.W.2d 91 (Tex.Cr.App.1977).

Finally, appellant directs us to numerous sidebar remarks by one of the prosecutors. After defense counsel's second objection, the prosecutor began counting—"That's two"—and persisted in the same vein, concluding (erroneously) that "I believe that's a total of ten objections that have been overruled." In addition, the prosecutor waxed indignant with such expressions as "Oh, come on, Judge, it would be nice to have the same right he has" and "Judge, that the most ridiculous thing I have ever heard."

It is not the province of prosecutors to keep up, or try to keep up, with the number of defense objections and their outcome. Even less useful is a hyperbolic attack on opposing counsel as a substitute for legal thinking. In this case, however, the trial court took command of the situation, instructing the jury on one occasion not to consider the remarks because counsel had the right to object and he had the right to make a ruling. This instruction[9] removed whatever force there was in this ill-considered arithmetic argument, enabling appellant to receive a fair trial.

Since no reversible error occurred, the judgment is affirmed.

a comment on his failure to testify, as discussed above.

8. This is not a case where, after a timely objection was overruled, counsel limited his argument to explaining what was erroneously permitted to be injected into the trial. *See and cf.*

*Nicholas v. State,* 502 S.W.2d 169, 173–75 (Tex. Cr.App.1973).

9. Counsel did not request an instruction or ask for a mistrial after the final sidebar remark about a so-called "ridiculous" objection.