Jimmy Doyle BUSH, Appellant,

v.

The STATE of Texas, Appellee.

No. 080–87.

Court of Criminal Appeals of Texas, En Banc.

May 17, 1989.

Richard Alley, Fort Worth, for appellant.

David K. Chapman, Mike Parrish, Asst. Dist. Attys., George Gallagher, Fort Worth, Sp. Prosecutors, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

The appellant was convicted by a jury of the offense of bribery pursuant to V.T.C.A. Penal Code, § 36.02, and assessed punishment by the jury at twenty-five years confinement in the Texas Department of Corrections and a fine of $10,000. On direct appeal to the Eleventh Court of Appeals in Eastland, Texas, the appellant's conviction was reversed. The court of appeals held that the prosecutor engaged in an improper jury argument which exceeded the scope of any invitation by the final argument of defense counsel and injected matters outside the record inappropriately bolstering the State's case. *Bush v. State*, 722 S.W.2d 41 (Tex.App.—Eastland, 1987). We granted the State's petition for discretionary review to examine the correctness of this holding.

The record reflects that appellant had originally been indicted for theft over $200.00 but under $10,000.00 in Cause No. 8770 in the 43rd Judicial District of Parker County. He was convicted and assessed punishment at ten years incarceration, he appealed the judgment and on appeal to the court of appeals the conviction and sentence was reversed. After the case was remanded to the trial court for a new trial, apparently the appellant and the district attorney of the 43rd Judicial District Court, Mac Smith, entered into plea negotiations culminating in the prosecution offer of two years in the Texas Department of Corrections in exchange for a guilty plea. This offer was accepted by appellant and a court date was set for the plea. Just prior to the date set for his entry of his guilty plea, appellant attended a "going away" party where he met Cindy Kissner Woolsey. Ms. Woolsey had been an employee of the District Attorney's Office for the 271st Judicial District, where Brock Smith, brother of Mac Smith, was, during her employment an assistant prosecutor. Since Brock Smith was, at the time of the party, the elected district attorney in that judicial district, Woolsey told appellant, "I can help you in Parker County."

Woolsey's helping the appellant manifested itself the following morning when Woolsey called Brock Smith, and informed him that she had met appellant and had learned that he was about to enter a plea of guilty in a theft case pending in Parker County and was to receive a two year sentence. The conversation continued and Brock Smith was informed that appellant desired probation and would pay up to $200,000.00 to achieve that result. She also relayed the information that on the night of the party she had seen appellant in possession of $500,000.00. Brock Smith immediately began an investigation and together with other law enforcement officials and Woolsey, it was arranged that Brock Smith would meet appellant where it was hoped that an exchange of money would take place. Brock Smith, after being wired with a tape recorder, met the appellant at the place designated, which had previously been arranged by Woolsey acting as a liaison.[1] After introductions, appellant told Smith that the sack containing $49,999.00 was for him and he could do with it what

---

1. Although not crystal clear, the record does indicate that at least from the time that Woolsey contacted Brock Smith until appellant and she were arrested, Woolsey was cooperating with the State. After the time she was released on a personal recognizance bond the record is muddled as to her involvement.

he wanted. After Smith took possession of the sack containing the money the appellant was arrested.

At trial, Cindy Woolsey did not testify, although a substantial portion of her statements were introduced before the jury as statements made by a coconspirator during the course and in furtherance of the conspiracy. She was subpoenaed by the appellant and outside the presence of the jury invoked her right to remain silent under the Fifth Amendment to the United States Constitution. Immediately prior to final argument, the trial court, under the threat of contempt, ordered appellant's attorney to refrain from mentioning that Woolsey had invoked her right to remain silent. This order was subsequently clarified when the following colloquy took place:

> Mr. Riley [defense counsel]: I heard the mention of some contempt here and I understand that we are not to mention under orders of this court the fact that she took the fifth, but I want to know if the Court is thinking we are going to be in contempt if we mention the fact that they did not call her and why and so forth, does that include that part, for I believe that would be cutting off part of our defense.

> The Court: I think you can comment on anything like that.

Afterwards, appellant's attorney made the following argument to the jury:

> You heard Brock Smith's testimony over strenuous objection as most of the testimony has been in this case from the defense standpoint, as to certain statements made by Cindy Kissner Woolsey. You haven't seen Cindy Kissner Woolsey and the State did not call Cindy Kissner Woolsey.

> \* \* \* \* \* \*

> [T]hey've got the burden of proof. They had the big buddy in Cindy Woolsey. She's their witness. She's there, she cooperated with them. She did everything they asked her to do. But wouldn't you have liked to seen and heard instead of having to go back there in that jury box and guess your way about that stripper. Don't you know, can't you imagine from the evidence what she's really like, as a stripper and State's witness saying, yes, it was a strip joint, and it was a topless bar. [Referring to Cindy Woolsey's place of employment.] And they were proud enough of her to just quote her over and over again. But didn't you —— didn't they have the duty of bringing her up here and letting you see her and judge her for yourself before you take a man's liberty on a felony case, wouldn't that have been important? It's the single biggest factor in this case beside public servant. . . . And when Brock Smith testified she told me that Jimmy was a cousin, and that's not true, by their own words it's not true. So what kind of a woman is this. What kind of a witness would you have heard, what kind of misrepresentation and out and out lies would you have heard if you would have had the opportunity. And the burden of proof is on them. They know they've got to take the burden of proof, but they want to skip over the biggest part of the whole case and say to you Palo Pinto people, guess about it, guess about what that woman would have looked like, and what actually took place at that old sorry party and what actually was said by each of these people. You don't know whether there was a conspiracy or not. The only way you could really know that beyond a reasonable doubt would have been us —— the State putting that woman on and having her testify and you hearing me cross-examine her then you would have had an even break at it, you would have had a chance, you would have had the case. But you just got half of it. The reasonableness of what he —— Brock even said she told him that he was willing to pay two hundred thousand dollars. Now, from the evidence do you believe that. And that he sat there and counted out, talking about the defendant, five hundred thousand dollars, that's why I asked the officer, how long do you think it would take to do it. It took him an hour and a half to count this. Those things are just not reasonable for a jury to believe so wouldn't it have been nice if the biggest thing in the case had hap-

pened to you people if you had been able to make your decision with that woman as a witness.... I ask you to consider carefully the fact that you might be listening to different arguments and you might be hearing —— having different things go through your mind if you had just been able to see that old stripper and hear her version of this thing and why on earth didn't they do it. You've got to ask yourself that question when you go in that jury room, why on earth didn't they do that for me as a juror.

Responding to the appellant's argument and over appellant's strenuous objection, the prosecutor argued:

Mr. Riley just told you why didn't they call Cindy Woolsey, make them explain. Well, I'm going to explain it to you, you know why, remember when y'all were all sitting out there and I said the thing that's important in this case to remember is the State and the defense have the same right to subpoena witnesses. At the same time or a little bit later on I told you in a criminal case in the State of Texas the State cannot call a defendant to the stand to testify.

\* \* \* \* \* \*

If both sides have the subpoena power and the State cannot call a defendant, or to the stand, who should have called Cindy Woolsey. You known why Cindy Woolsey was not called, because she would have testified to everything that Brock Smith said she would have testified.

The court of appeals, in reversing appellant's conviction, wrote:

The record is clear that the reason Woolsey was not called was that she would claim her Fifth Amendment right. The emphasized argument of the State's attorney was outside the record, contrary to the testimony outside the presence of the jury, and bolstering to its witness, Brock Smith.

*Bush v. State, id.,* at 44.

The court of appeals then quoted *Brown v. State,* 165 Tex.Cr.R. 452, 309 S.W.2d 452 (1958), as follows:

'This Court has on many occasions condemned any effort on the part of the State to bolster the credibility of its witnesses by unsworn testimony. [Citations omitted.]'

*Id.,* 722 S.W.2d at 45.

In concluding their opinion, the court of appeals stated:

We hold that the argument of which complaint is made does not fall within the approved general areas of argument. It exceeds the scope of any invitation. Woolsey's statements were critical to the State's case. The argument was clearly outside the record and bolstering the State's witness. Therefore, it was harmful to the appellant.

*Id.*

The State now asserts that the court of appeals was incorrect in its analysis for three reasons: (A) the prosecutor's argument did nothing more than restate the converse of what appellant's attorney had argued to the jury; (B) the prosecutor's argument was a reasonable response to appellant's final argument; and (C) the error, if any, was harmless. The appellant contends that although the court of appeals reached the right conclusion the prosecutor's argument in this case also was in violation of the dictates of *Hendricks v. State,* 640 S.W.2d 932 (Tex.Cr.App.1982).

■ It should be first noted that we have examined the appellant's entire argument and not merely that portion quoted previously. The appellant did state that Woolsey had cooperated with the State throughout the prosecution. However, he immediately contrasted her cooperation with rhetorical questions about her character and veracity. Taken in context, that is hardly the same as arguing Woolsey's testimony and that of Brock Smith's would have been identical.

In *Hendricks, id.,* at 937, this Court held as a general proposition that it would be improper for the prosecution to comment on the failure of the defendant to call a witness, if that witness was unavailable through no fault of the defendant. Appellant claims that since Woolsey invoked her right to remain silent she was unavailable

and the State was therefore prohibited from commenting that since the appellant had the power of subpoena he could have called her to testify. We believe that what transpired during the course of final argument makes the invocation of the *Hendricks* doctrine inapplicable. Looking to the appellant's final argument it is obvious that appellant's attorney emphasized that the State failed to call Woolsey, who was a material witness to the events which lead to appellant's prosecution. Although appellant received the trial court's permission to make such an argument he argued at his own risk.[2] Once Woolsey claimed her right to remain silent under the Fifth Amendment, she was unavailable to the State as well as the appellant. Cf. *Whitemore v. State,* 570 S.W.2d 889 (Tex.Cr.App.1977) (on rehearing). Notwithstanding Woolsey's unavailability as a witness, the appellant's attorney nevertheless proceeded to make her absence an issue for the jury to consider. Knowing full well why Woolsey was not a witness, the appellant imposed upon the State the necessity of making a response by making this comment: "[d]idn't they have the duty of bringing her up here and letting you see her and judge her for yourself before you take a man's liberty on a felony case...." Accordingly, we conclude that appellant "opened the door" for the State to make a legitimate and proper response to such argument, although under other circumstances such an argument would have been manifestly improper.

■ The real question, however, is whether the State's reply went beyond the scope of appellant's invitation. In *Johnson v. State,* 611 S.W.2d 649, 650 (Tex.Cr.App. 1981), this Court stated:

> The invited argument rule permits prosecutorial argument outside the record in response to defense argument which goes outside the record. *Franks v. State* (Tex.Cr.App.), 574 S.W.2d 124. However, a prosecutor may not stray beyond the scope of the invitation. *Kin-*

*caid v. State* (Tex.Cr.App.), 534 S.W.2d 340.

True, as previously noted, appellant's counsel implied that since the State had the burden of proof it was therefore obligated to call Woolsey, and queried the jury as to just what kind of witness Woolsey would have made, but his argument was based upon the record. Although, the appellant's argument certainly entitled the prosecution to respond in kind, i.e., that it could not call Woolsey under the circumstances, beyond that the invitation did not extend. See also *Garrison v. State,* 528 S.W.2d 837 (Tex.Cr. App.1975); *Seay v. State,* 395 S.W.2d 40 (Tex.Cr.App.1965). The State strayed beyond the scope of the open door in two respects. First, the State's argument went outside the record, and brought before the jury the nature and tenor of what Woolsey would have testified to had she been called to the stand, that being in a manner consistent with the testimony of Brock Smith, thereby bolstering his testimony. Second, the argument left a false impression with the jury that one of the reasons she was not called was "... because she would have testified to everything that Brock Smith said she would have testified." The record makes clear that Woolsey was not called by the State because she invoked her right to remain silent. The court of appeals therefore reached the proper result when it concluded that the prosecutor's argument was improper.

The State also asserts that if there was error it was harmless. This, however, has already been examined by the court of appeals and we will defer to their conclusion that the error was harmful to the appellant.

Accordingly, we affirm the judgment of the court of appeals.

McCORMICK, P.J., and WHITE and BERCHELMANN, JJ., dissent.

TEAGUE, J., concurs.

---

2. The State actually acquiesced and allowed appellant to make such an argument, in that it failed to lodge an objection. Under present law it is a proper trial strategy to lay behind the log in the hope that opposing counsel will "open the door" and allow what would be deemed improper argument as a response.

CAMPBELL, J., concurs in the finding of the commission of error by the prosecutor, but dissents to the conclusion that the error was harmful under Rule 81(b)(2), Tex.R.App.Pro.