**Reyes L. SOLIZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00226–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 26, 1990.

Discretionary Review Refused Oct. 24, 1990.

Henry Burkholder III, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Alan Curry and Kari Sckerl, Asst. Dist. Attys., for appellee.

Before SAM BASS, HUGHES and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a conviction for burglary of a building with intent to commit theft. After the jury found appellant, Reyes Soliz, guilty, the trial court found the enhancement paragraphs true and assessed punishment of 25 years confinement. We affirm.

Jerald Landon, complainant, was partial owner of Southwest Chemical Services before he retired. Southwest Chemical owned a plant that is no longer in operation. The plant had been closed approximately six years. The plant site was listed for sale when the offense in this case was committed. The site was not open to the public, and no one (other than the real estate agent) had permission to enter the property. The buildings on the site were surrounded by a cyclone fence with double gates, which were normally kept locked. After the plant had closed, but before being sold, the property was frequently vandalized. The buildings on the site had been stripped of aluminum siding, and copper wiring had been removed. Some doors and window frames had been removed from the buildings.

In October 1988, Landon contacted Morris Covin, a certified peace officer who provides security services. Landon asked Covin to watch the property and report any vandalism. On October 20, Covin inspected the property and saw no one in the buildings. The next day, Landon received a telephone call from persons who told him that they had seen some people on the property. Landon telephoned Covin, who went to the plant site.

When he arrived, Covin found the fence gate was open. In one of the buildings,

Covin found three people removing wiring and cables from electrical conduits with wirecutters and screwdrivers. Appellant was one of the people. Covin took the three men outside, gave them *Miranda* warnings, and called the police department.

## I. The building

In appellant's first point of error, he contends the evidence was insufficient to show that the structure he entered was actually a "building."

In reviewing the sufficiency of the evidence, we view it in the light most favorable to the verdict. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984); *Barron v. State*, 773 S.W.2d 44, 46 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). We must determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Crim.App.1985); *Johnson v. State*, 773 S.W.2d 721, 726 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

A "building," as defined by the Texas Penal Code, is "any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use." TEX. PENAL CODE ANN. § 30.01(2) (Vernon 1989). Appellant relies on *Day v. State*, 534 S.W.2d 681 (Tex.Crim.App.1976), to support his argument that the structure was not a building for purposes of section 30.01(2).

The court described the building in *Day* as a structure built of concrete blocks with three large doorways that were not capable of being closed. 534 S.W.2d at 683. The court said it was a shed, built to protect goods from the elements, not designed for the security of its contents. *Id.* at 684. The openings were large enough for trucks to enter the structure. *Id.* at 685. Because there were no doors on the structure, none had been broken to enter it. The court held the structure was not a building within the definition of section 30.01(2). *Id.*

The structure in this case was described as a complex of several large, adjoining

structures. The structures had two kinds of doors, large drive-through doors with loading docks and person-size doors. Exhibit 5 shows one large opening. Covin testified that the opening still had an attached door. Covin testified, however, that he thought a couple of the doors had been left open. Exhibit 2 shows another large opening. Covin could not say whether there was a door attached, or whether it had been removed. Throughout the complex, several doors were still closed.

The structure in this case is distinguishable from the one in *Day*. The openings in the *Day* structure were permanent, and had been designed without any way of closing them. There had never been any doors on the openings. Here, the openings were designed with doors so that the structure could be closed. Most of the doorways had doors at one time and some still had them.

In *Ellett v. State*, 607 S.W.2d 545, 549 (Tex.Crim.App. [Panel Op.] 1980), the structure did not have large, permanent openings, as in *Day*. The structure was a hotel that was intended to be locked. *Id.* Before the offense in *Ellett*, the police had received a number of calls about trespassers. *Id.* Windows in the structure had been broken, and the back door had been left open. *Id.* As in *Ellett*, the property in this case suffered vandalism, and we do not know whether the doors were left open by the owner or by trespassers.

A reasonable trier of fact could have found that the structure in this case was a building. We overrule appellant's first point of error.

## II. Hearsay

■ In his second point, appellant claims the trial court erred when it admitted the hearsay testimony that gave the police officers probable cause to investigate the property site.

During direct examination, the prosecutor asked the owner of the property about his conversation with his real estate agent on October 21, 1988. Before the witness answered, defense counsel objected to the testimony as being hearsay. The prosecutor said that "it goes solely to probable cause for the police officers going out there to investigate, and therefore, is admissible." The trial court overruled the objection. The owner answered:

Mr. Hedrich called to indicate that he had information that there were people on the property.

The owner further explained that he then telephoned Covin, who had been hired to deter vandalism at the property site.

■ Hearsay is testimony about an out-of-court statement, offered to prove the truth of the matter asserted. Tex.R.Crim. Evid. 801(d); *see Lyons v. State*, 668 S.W.2d 767, 768 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). An out-of-court statement, offered to show *what* was said, rather than the *truth* of what was said, is not hearsay. *Livingston v. State*, 739 S.W.2d 311, 331 (Tex.Crim.App.1987); *McKay v. State*, 707 S.W.2d 23, 33 (Tex. Crim.App.1985).

The State argues that it did not offer the statement to prove the truth of the matter. It appears from the record that the State was not trying to show that the real estate agent's statement was truthful. Instead, it appears that the State was merely trying to show that the agent told the owner that people were at the property, and that the statement prompted the owner to call Covin to investigate.

Even if the statement is hearsay, however, it is not harmful. Tex.R.App.P. 81(b)(2). Improperly admitted hearsay evidence is reversible error only if there is a reasonable possibility that the evidence is prejudicial to the defendant, or may have contributed to his conviction. *Williams v. State*, 666 S.W.2d 366, 368 (Tex.App.—Houston [1st Dist.] 1984, no pet.).

■ In *Perez v. State*, 678 S.W.2d 85, 86 (Tex.Crim.App.1984), the witness testified:

Myself and Officer Taylor had been sent to the area around 14th and Avenue J to investigate a report of a Mexican male prowling cars in the area.

The general rule is that hearsay evidence relating to probable cause is not admissible before the jury, when the issue has not been raised. *Id.* at 87; *Gaston v. State*,

**113**

574 S.W.2d 120, 121 (Tex.Crim.App. [Panel Op.] 1978); *Maxon v. State,* 507 S.W.2d 234, 235 (Tex.Crim.App.1974). But, if the evidence does not identify or connect the accused with the information, the error is not prejudicial. *Perez,* 678 S.W.2d at 87; *Maxon,* 507 S.W.2d at 235.

In *Perez,* the only information in the statement was about a Mexican male. The statement did not identify the defendant with enough specificity to make the information harmful. *Perez,* 678 S.W.2d at 87. In *Maxon,* a police officer testified that he went to the address, where he found the defendant, because "[he] received information that the people living at that address were dealing." 507 S.W.2d at 234. The information contained no reference to the defendant by name or description. *Id.* at 235. The address and the phrase "people living there" was the only information given. *Id.* Because the address was that of an 18–unit apartment complex, the information did not connect the accused with the information. *Id.*

The information in this case is even less harmful. The owner testified that the property had been subjected to vandalism in the past. A statement that there "were people on the property" did not identify appellant or connect him with the information in any way.

■ Further, the same or similar evidence came in elsewhere without objection. Covin testified that someone working on the road adjacent to the site had contacted Landon the day of the offense, and told Landon that there were persons in the plant. In turn, Landon contacted Covin, who went to the plant. Any error in admission of evidence is cured when the same evidence comes in elsewhere without objection. *Hudson v. State,* 675 S.W.2d 507, 511 (Tex.Crim.App.1984). Defense counsel must object every time inadmissible evidence is offered. *Id.; Lee v. State,* 779 S.W.2d 913, 917 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

We overrule appellant's second point of error.

### III. Ineffective counsel

In his third point of error, appellant claims he was denied effective assistance of counsel. Appellant contends his trial counsel failed to object to the admission of two penitentiary packets that were not properly certified under Tex.R.Crim.Evid. 902. When the packets were offered, defense counsel did object, but for reasons other than improper certification.

We must determine whether appellant received "reasonably effective assistance of counsel." *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980). The sufficiency of trial counsel's assistance is gauged by the totality of the representation. *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App.1987). The constitutional right to counsel does not mean errorless counsel, and we will not judge counsel's effectiveness by hindsight. *Id.; Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Even if trial counsel is found ineffective, appellant must show that the ineffective assistance harmed him. *Stone,* 751 S.W.2d at 582.

Before we decide whether trial counsel should have objected that the penitentiary packets were not properly certified, we must first determine whether the packets were defective. Appellant claims that: (1) the deputy clerk, who certified the records, did not have the authority to sign the county clerk's name; and (2) the documents do not bear the county court's seal, suggesting a lack of authority. The authentication is as follows:

The State of Texas
County of Walker
   I, *James D. Patton,* Clerk of the County Court of the County of Walker, State of Texas, which Court is a court of records having a seal which is annexed hereto, do certify that *Frank J. Robinson* whose name is subscribed to the foregoing Certificate of the due Attestation, was at the aforesaid subscribing, the same Judge of the County Court aforesaid, and was duly commissioned, qualified and authorized by LAW to execute the said Certificate, and I do further

certify that the signature of the above named Judge of the said Certificate of due Attestation is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and annexed the seal of the County Court at my office in said County, this the _3rd_ day of _Dec._ 19_88._

  _James D. Patton_ CLERK

  County Court, Walker County, Texas

  _By: Debra R. Marq_ [sic], _Deputy_

### A. The signature

 Appellant contends that we can presume the penitentiary packets were valid only to the extent that they show on their face that Debra R. Marq had authority to authenticate the county judge's signature. Appellant argues that only James D. Patton, the clerk of the county court in Walker County, could authenticate the county judge's signature. We disagree.

A deputy clerk acts in the name of the county clerk and may perform all official acts that the county clerk may perform. TEX. LOCAL GOV'T CODE ANN. § 82.005(c) (Vernon 1988). In _Dingler v. State,_ 768 S.W.2d 305, 306 (Tex.Crim.App.1989), the court stated that the judgments in the penitentiary packets, certified by the district clerk _or one of his deputies,_ were "duly attested." In _McCall v. State,_ 750 S.W.2d 307, 308 (Tex.App.—Beaumont 1988, no pet.), the documents were certified by the deputy clerk in the same manner as in this case. The deputy clerk in _McCall_ wrote the county clerk's name, and then wrote: "By /s/ _Reba Reeves_ Deputy." _Id._ The court in _McCall_ held that the certification was proper. _Id._ at 309. The signature in this case is also proper.

### B. The seals

Appellant argues the penitentiary packets were not properly authenticated because they do not show a seal of James D.

Patton, the clerk of the county court in Walker County.

The photocopies of the exhibits contained in the record before us do not show a seal next to the name of Debra R. Marq, the Walker County deputy clerk. Because we were furnished only photocopies of the penitentiary packets in the appellate record, we ordered the original exhibits to be sent to this Court. After examining the exhibits, we found that both penitentiary packets bore the seal of the clerk of the county court.[1] _See Dingler,_ 768 S.W.2d at 306.

We hold that the penitentiary packets were not defective, and thus it was not error for counsel not to object to them.

We overrule appellant's third point of error.

---

1. This point of error has become a standard point of error in many briefs. Photocopies of all the documents, including the penitentiary packets, are sent to this Court. It would be

helpful to us if the county clerks would impose their seals in such a way that a photocopy of the document received by this Court shows the seal.