Manning v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-262-CR

     ANTHONY MANNING,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 12th District Court
Madison County, Texas
Trial Court # 9244
                                                                                                    

O P I N I O N
                                                                                                    

      Anthony Manning was indicted for, and a jury found him guilty of, burglary of a habitation. 
Tex. Penal Code Ann. § 30.02 (Vernon 1994). Manning elected to have the court assess
punishment and he pled "not true" to two allegations of prior felony convictions. The court found
them true, however, and assessed punishment at fifty years in prison.
      In seven points, Manning complains that the court erred in:
      •    excluding testimony of a witness;
      •    allowing the State to impeach an alibi witness with evidence of her husband's conviction;
      •    allowing evidence of an extraneous offense;
      •    denying his "motion to testify without impeachment";
      •    allowing improper summation about fingerprints;
      •    overruling his objection to the use of a void prior conviction; and
      •    admitting "pen packets" that were not self-authenticated.
We will overrule all of the points and affirm the judgment.
FACTS
      The State offered evidence that Boyce and Ann Cole lived at 102 West Marietta in
Madisonville. On May 7, 1993, Boyce took Ann to work, went to a cafe for coffee with friends,
and returned home "a little after 8:00 o'clock." When he went inside, he noticed a ski rope
hanging from a hole in the dining room ceiling and pieces of sheetrock on the floor. The hole had
not been there earlier. Cole "hollered" for whoever was in the house to "come out and let me
know something" and called 9-1-1, but the call did not go through. After several repeated
attempts to contact a law enforcement agency, he reached the sheriff's department and told the
dispatcher that he was being robbed.
      While waiting for the officers, Cole heard the bathroom door slam, then immediately went
outside because he thought that the intruder was going out the bathroom window. He saw
someone coming from a hedge that "is right by the bathroom window." He "hollered" for the
person to stop and followed him for about a block. During that time, the other party turned so that
Cole got "a good look at him." Cole returned home and found the bathroom window open and
the screen on the ground between the house and the hedge. He viewed a "photo spread" later that
day and, based on having seen the person who was leaving his property, identified that person as
Manning. He also described the clothing that Manning was wearing and other physical
characteristics. He said that the attic was insulated and he would expect someone in his attic who
knocked a hole in the ceiling to have insulation and sheetrock dust on their person.
      Larry Adams, the Precinct 1 Constable, and Ivan Linbaugh, a sergeant with the Madisonville
police department, arrived at the Coles' home shortly after receiving a report of the burglary and
made an inspection of the area. Adams found a pull-down stairway in the garage in the down
position and learned there was access from the attic of the garage to the attic of the house. Finding
the door locked, Adams used an ice pick to gain entry to the bathroom, where he discovered a
screwdriver covered with sheetrock dust on the floor. He also found that the window screen was
off. He discovered a second screwdriver outside on the ground three to four feet from the
bathroom window near the edge of the house. Both screwdrivers had been located in a toolbox
in Cole's pickup parked in the garage. Adams theorized that the burglar had taken the
screwdrivers from the toolbox, used the stairway to gain entrance to the attics, pulled the
insulation back, used the screwdrivers to punch through the sheetrock, and used the rope to lower
himself into the residence. He also said that the burglar would have had some sheetrock and
insulation on him.
      Michael Minter, another deputy sheriff, heard a report of the incident and a description of the
suspect and began patrolling the area around the Coles' home. At 9:14 a.m. he saw someone who
fit the general description he had been given. When he approached the person, who identified
himself as Manning, Manning ran but was apprehended about ten minutes later. The shirt that
Manning was wearing when arrested was admitted into evidence and identified by Adams as
having a white substance on the right sleeve and some kind of other material on it. A piece of the
insulation from the Coles' attic was also admitted into evidence.
ALIBI WITNESS
      Denise Betts testified that she awoke at about 8:00 a.m. on the morning that the Coles' home
was burglarized to the sound of a lawn mower running at the house of her next-door neighbor,
Manning. She said that she dressed and went to her back porch to wait until he finished so she
could use the mower. On cross-examination, the State elicited testimony over Manning's objection
that Betts had testified as an alibi witness when her husband, Roy, was tried for delivery of
cocaine. Manning's objections, (1) "this is going into the character of her husband and the
relationship between her husband" and (2) "the prejudicial value outweighs the probative value,"
were overruled on grounds that the State was attempting to prove the witness's bias. After redirect
examination, the State inquired what sentence Roy received when he was convicted. Manning
again objected to the inquiry into the details of the conviction, but the objection was overruled. 
His second point of error attacks those rulings.
      Exposing a witness's motivation to testify either for the accused or for the state, or against
the accused or against the state, is a proper and important purpose of cross-examination. London
v. State, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987). In exercising this right, either party is
allowed great latitude to show any fact which would or might tend to establish ill feeling, bias,
motive, or animus on the part of the witness. The trial judge's discretion in this area is, though
broad, not without limits. Id. 
      Although the State correctly argues that great latitude should be allowed in cross-examining
witnesses to reveal possible bias, prejudice, or self-interested motives to falsify testimony, it is
likewise true that the burden of showing the relevance of particular evidence to the issue of bias
rests on its proponent. Chambers v. State, 866 S.W.2d 9, 26 (Tex. Crim. App. 1993), cert.
denied, ——— U.S. ———, 114 S.Ct. 1871, 1238 L.Ed.2d 491 (1994). The parameters of
cross-examination for the showing of bias rest within the sound discretion of the trial judge. Id.
at 27. The judge must balance probative value against prejudicial risks, i.e., undue prejudice,
embarrassment, harassment, confusion of the issues, and undue delay. Id. The court's
determination will not be disturbed unless the appellant shows a clear abuse of discretion. Id. The
court has "wide latitude" to decide whether or not proffered evidence is actually relevant to show
bias, motive, etc., on the part of a witness. Tucker v. State, 771 S.W.2d 523, 531 (Tex. Crim.
App. 1988), cert. denied, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). However, this
is not to say that obviously relevant evidence is admissible even if it suffers from some other
evidentiary shortcoming, such as being objectionable as hearsay. Id. 
      In London, the Court of Criminal Appeals reviewed a conviction for theft where the State had
been permitted to impeach an alibi witness with questions about her bias against the prosecutor,
who had brought about her brother's conviction of an offense and filed a motion to revoke his
probation which resulted in his then being in jail. London, 739 S.W.2d at 845. The Court pointed
out that the witness did know that it was the same prosecutor who had represented the state against
her brother, that she did not participate in his trial, and that she had no criminal record. Id. In
finding error, the Court said:
However, when it comes to the prosecutor impeaching a defense witness whose relative
or relatives might have had or has problems with the law, we find and hold that before such
becomes admissible evidence the State must first establish that there is some causal connection
or relationship between the relative's problems and the witness' testimony at the accused's
trial. We find the crucial question that must be answered in that instance is whether the
witness is testifying against the State because of his relative's problems with the law, and for
no other reason.
Id. at 846. 
      Here, the State inquired about Betts' involvement as a witness at her husband's
trial—questions designed to establish a causal connection or relationship between her husband's
trial and her testimony at Manning's trial and to show that she was testifying for Manning because
of her husband's problems with the law. Although it might have been better to require the State
to establish the predicate required by London outside the presence of the jury and to restrict the
State's questions to those of a more general nature about Betts' prior testimony as opposed to the
details of her husband's conviction, we cannot say that the court abused its discretion in allowing
the questions. Id.; Chambers, 866 S.W.2d at 27. Point two is overruled.
FLIGHT
      Manning's next point asserts that the court erred in allowing evidence that he ran when
accosted by Officer Minter, saying the State did not prove that the chase related to the burglary. 
He notes that, as Minter approached Manning, Manning asked, "You got a warrant for me?" 
This, he says, shows that his flight was related to outstanding warrants and not to the offense of
burglary.
      Evidence of flight is admissible as a circumstance from which an inference of guilt may be
drawn. Burks v. State, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994), cert denied, ——— U.S.
———, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). Before such evidence is admitted, however, it
must appear that it has some relevance to the offense under prosecution. Id. Once this relevancy
requirement is met, evidence of "escape from custody or flight to avoid arrest" is admissible unless
the defendant shows that escape or flight were related to circumstances unrelated to the charged
offense. Id. Furthermore, flight is no less relevant if it is only flight from custody or to avoid
arrest. Id. 
      Burks relies on Rumbaugh v. State, where the Court of Criminal Appeals had earlier held that
a defendant who desires to have evidence of flight excluded bears the burden of showing that the
flight is relevant to some other transaction and not to the offense on trial. Rumbaugh v. State, 629
S.W.2d 747, 752 (Tex. Crim. App. 1982) (citing Wockenfuss v. State, 521 S.W.2d 630 (Tex.
Crim. App. 1975)). Absent any showing by Manning that he was fleeing because of outstanding
warrants, the court properly admitted the evidence that he ran when approached by Minter. Burks,
876 S.W.2d at 904. We overrule point three.
EXPOSURE TO IMPEACHMENT
      Manning filed a motion asking the court to allow him to testify without being subjected to
impeachment with evidence of his previous convictions. He based the motion on the assertion that
"[t]he prejudicial effect of the previous convictions will substantially outweigh the probative value
such evidence would have concerning [his] credibility." The court denied the motion, and
Manning elected not to testify. That denial forms the basis for his fourth point.
      We have previously held that a defendant who elects not to testify in the face of an adverse
ruling concerning the use of prior convictions cannot complain because we have no way to know
whether the state would have impeached him. Richardson v. State, 832 S.W.2d 168, 172 (Tex.
App.—Waco 1992, pet. ref'd). We also observe that we have no way of knowing what Manning's
testimony would have been. Point four is overruled.
FINGERPRINTS
      Manning called Linbaugh, the Madisonville police sergeant, to testify. Linbaugh said that
among the items of physical evidence taken at the Coles' home were fingerprints from the inside
bathroom doorknob and a ceiling joist in the attic. The only testimony Manning elicited from
Linbaugh about the identity of the fingerprints was that they had been submitted for comparison
to two or three different individuals—one with the Conroe police department, one with the Bryan
police department, and one who was then dead. On cross-examination by the State, Linbaugh said
that no one had been able to make an identification of the fingerprints.
      During final argument, the prosecutor said, "I can assure you if those fingerprints would have
been someone else's other than the defendant's, who didn't have permission to be in that house,
we wouldn't be here today." When Manning objected, the State pointed out that its argument was
in response to his prior argument about (1) the absence of expert witnesses or reports about the
fingerprints and (2) the State's burden of proving their own physical evidence.
      Proper jury argument falls within one of the following categories: (1) a summary of the
evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument;
or (4) a plea for law enforcement. Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App.
1973). The invited-argument rule permits prosecutorial argument outside the record in response
to defense argument which goes outside the record; however, an argument may not be justified
by asserting "invited argument" when the reply strayed beyond the scope of the invitation. Bush
v. State, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989).
      Based on all of the evidence in the record and considering that the evidence of fingerprints
was admitted through a witness called by Manning, we believe that the State's reply was a fair
response to Manning's argument. We overrule point five.
EXCLUDED EVIDENCE
      As Manning succinctly points out: "The primary issue in the trial was identity." After the
State rested, Manning called Kenneth (Kenny Boo) Giddens to testify. Outside of the presence of
the jury, Giddens testified about his criminal record, which included two burglaries of habitations
and an unauthorized use of a motor vehicle. Manning then attempted to offer testimony that
Giddens was in Madisonville on the day the Coles' home was burglarized and—knowing that
Giddens would deny committing the burglary for which Manning was on trial—impeach him by
showing that his physical characteristics were similar to those reported by Cole and that clothing
that he had worn was similar to that reported by Cole. 
      In front of the jury, Giddens was asked his name, allowed to stand with Manning beside him,
and allowed to stand in the back of the courtroom with Manning, with each looking over his right
shoulder. The court sustained the State's objection to further testimony by Giddens. Out of the
jury's presence, Giddens testified about his height and weight, where he worked, and where he
lived. He said that he did not commit the burglary of the Coles' residence and he did not know
whether Manning committed the burglary.
      The State made objections under both Rules 401-02 and Rule 403. Tex. R. Crim. Evid. 401,
402, 403. Evidence is relevant if it has any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence. Id. 401. Rule 402 provides in part: "Evidence which is not relevant is
inadmissible." Id. 402. The determination of whether evidence is relevant to any issue in the case
lies within the discretion of the court. Id. 401; Johnson v. State, 698 S.W.2d 154, 160 (Tex.
Crim. App. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). The court
has no discretion, however, to admit evidence that it has determined is not relevant. Tex. R.
Crim. Evid. 402. 
      Rule 403 provides in part: "Although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence." Id. 403.
      The determination of the admissibility of evidence is within the discretion of the court. Id.
104; Jackson v. State, 575 S.W.2d 567, 570 (Tex. Crim. App. [Panel Op.] 1979). Error does not
occur unless the court abuses that discretion. Werner v. State, 711 S.W.2d 639, 643 (Tex. Crim.
App. 1986).
      Manning points to the holding in Renfro v. State, 822 S.W.2d 757, 759 (Tex. App.—Houston
[14th Dist.] 1992, pet. ref'd). The Houston court said that, when identification is an important
issue at trial, "evidence showing that another person similar in appearance to the Defendant was
committing similar crimes at about the same time, and that one person mistakenly identified the
Defendant as such criminal, is admissible." Id. at 758 (citing Holt v. United States, 342 F.2d 163,
165 (5th Cir. 1965)). Although Manning's offer of proof differs from the Renfro facts, we believe
that his point is well taken. See id. at 759.
      The court allowed Giddens to tell the jury his name and to stand before them but would not
allow him to tell them how much he weighed, his height, where he worked, or where he lived. 
If the court had excluded the former testimony on the basis that it was not relevant or, if relevant,
its probative value was substantially outweighed by its tendency to mislead or confuse the jury,
then the latter testimony might have been excluded on the same basis. Tex. R. Crim. Evid. 401,
403. Having allowed Giddens to testify, however, we hold that the court abused its discretion in
excluding the additional evidence of his height, weight, employment, and residence, because that
evidence was just as relevant and no more likely to violate Rule 403 than the evidence that the
court allowed. Id. By the same token, the court properly excluded Giddens' testimony that he
did not commit the burglary on trial—evidence that had no tendency to make it more or less
probable that Manning did. Id. 401. Because that evidence was not relevant, it was not
admissible. Id. 402. We should not be heard to say that evidence of the type Manning offered
through Giddens will always be relevant and thus admissible. We say only that, having admitted
a part of his testimony, the court erred in excluding other testimony that was then relevant.
      Having determined that the court erred in failing to admit evidence offered by Manning, we
must now determine whether the error contributed to the conviction or punishment. Tex. R. App.
P. 81(b)(2). In making that determination, we will consider the following six factors:
      1.   the source of the error;
      2.   the nature of the error;
      3.   whether or to what extent the error was emphasized by the State;
      4.   the probable implications of the error;
      5.   how much weight a juror would probably place on the error; and
      6.   whether declaring the error harmless would encourage the State to repeat it with
impunity.
Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). We do not focus on the propriety
of the outcome of the trial, but on the integrity of the process that led to conviction and
punishment. Id.
      The source of the error was Manning's offer of evidence and the nature of the error was the
court's failure to apply the rules evenly. The State urged the court not to allow Giddens to testify
at all; thus, declaring the error harmless would not encourage the State to repeat it. When we turn
to the implications of the error and the weight a juror would probably place on the error, we find
that Manning argued:
Kenny Boo Giddens, similar height, similar weight, closer to the description. If you look
at the size and the weight that was described, he's actually closer to the description. Lives
in the neighborhood and he's closer. The only thing was they didn't see him on the street that
day. If they had seen him on the street that day, I wonder what he would have been wearing;
red shirt, blue cap possibly? The people that knew him said that's the kind of stuff he would
wear. That's consistent with him, too.
This argument was supported by the record because Denise Betts testified without objection that
it was not unusual for Manning to wear a red tee-shirt and a blue baseball cap while he was living
in Madisonville. Finding that the error was not emphasized by the State and considering the other
factors that we have described, we find beyond a reasonable doubt that the error did not contribute
to Manning's conviction or punishment. Id.; Tex. R. App. P. 81(b)(2). We overrule point one.
PEN PACKETS
      The seventh point complains of the admission during the punishment phase of two "pen
packets"—records of his prior convictions from the Texas Department of Criminal
Justice—Institutional Division—over Manning's objection that they were not properly self-authenticated. He candidly admits that the form he objects to, i.e., authentication by a deputy
clerk of a court in the name of the clerk, has been previously addressed and upheld. Soliz v. State,
794 S.W.2d 110, 114 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). He says, however, that
his objection is different. He asserts that the clerk cannot act "by" a deputy, whereas he says Soliz
held only that a deputy county clerk may perform all acts that the clerk could perform. We see
no distinction.
      Each exemplification contained a certification of the authority of Frank J. Robinson, the judge
of the county court of Walker County, made by James D. Patton, the clerk of the county court of
Walker County, "By: Judy Thompson Deputy." The form of these certificates is proper under
section 82.005 of the Local Government Code. Tex. Loc. Gov't Code Ann. § 82.005(c)
(Vernon 1988). We hold that the exhibits were properly authenticated. We overrule point seven.
PRIOR CONVICTION
      Manning's sixth point asserts that one of the prior convictions was void because he was denied
the effective assistance of counsel when there was no appeal. No notice of appeal or waiver of
appeal appears in the records of the prior conviction. The only evidence on the question is
Manning's testimony that his lawyer said she would appeal the conviction, but never did. The
State's brief points to Manning's burden of proof in collaterally attacking the prior conviction and
says that any error in admitting the conviction was rendered harmless by the admission of another
prior conviction. Either prior conviction, it asserts, justified the imposition of fifty years in
prison. We agree with the State's first contention; thus, we do not reach the second.
      The State proved Manning's prior conviction by introducing into evidence a certified copy of
a "pen packet." The burden then shifted to Manning to make an affirmative showing of any defect
in the judgment rendering the prior conviction void. Johnson v. State, 725 S.W.2d 245, 247 (Tex.
Crim. App. 1987). Whenever a collateral attack is lodged against (1) a prior conviction by habeas
corpus or (2) a prior conviction used to enhance punishment in an ongoing trial, a defendant
alleging ineffective assistance of counsel must prove by a preponderance of the evidence that the
prior conviction is void. Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App.), cert. denied,
——— U.S. ———, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993); Galloway v. State, 578 S.W.2d 142,
143 (Tex. Crim. App. [Panel Op.] 1979). Because Manning had the burden of proof under a
preponderance-of-the-evidence standard, the sufficiency review on appeal is governed by Meraz
v. State, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990):
[W]hen the courts of appeals are called upon to exercise their fact jurisdiction, that is,
examine whether appellant proved his affirmative defense or other fact issue where the law
has designated that the defendant has the burden of proof by a preponderance of evidence, the
correct standard of review is whether after considering all the evidence relevant to the issue
at hand, the judgment is so against the great weight and preponderance of the evidence so as
to be manifestly unjust.
(Emphasis added). Thus, our inquiry is directed to whether the court's implied finding that
Manning was not deprived of effective assistance of counsel is so against the great weight and
preponderance of the evidence as to be manifestly unjust.


 See id.
      Because the court found the enhancement paragraph "true," we must assume that it, sitting
as trier of fact, concluded that Manning failed to prove by a preponderance of the evidence that
counsel's actions violated the Strickland standards. Strickland v. Washington, 466 U.S. 668, 690,
104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Manning's burden on appeal is to establish that
implied findings on the Strickland standards are so against the great weight and preponderance of
the evidence as to be manifestly unjust. See Meraz, 785 S.W.2d at 155.
      Questions of admissibility of evidence are addressed to the court. Tex. R. Crim. Evid.
104(a). When a fact issue is tried to the court, the trial judge is the sole judge of the credibility
of the witnesses and may accept or reject all or any part of the testimony given by any witness. 
Johnson v. State, 571 S.W.2d 170, 173 (Tex. Crim. App. [Panel Op.] 1978). The judge was
entitled to disbelieve Manning's testimony about the appeal of his prior conviction and, in absence
of any other evidence, could have found that Manning did not discharge his burden of proving that
his prior conviction was void. Such a finding would not be so against the great weight and
preponderance of the evidence as to be manifestly unjust. Meraz, 785 S.W.2d at 155. We
overrule point six.
CONCLUSION
      Having overruled all of Manning's points, we affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed
Do not publish