# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-99-00666-CR
===============

**Tramelle Deschun Wallace, Appellant**

**v.**

**The State of Texas, Appellee**

========================================================================
### FROM THE DISTRICT COURT OF HARRIS COUNTY, 177TH JUDICIAL DISTRICT
### NO. 808,764, HONORABLE CAROL G. DAVIES, JUDGE PRESIDING
========================================================================

Tramelle Deschun Wallace appeals from his conviction for possession of less than one gram of phencyclidine. *See* Tex. Health & Safety Code Ann. §§ 481.102(8), .115(a), (b) (West Supp. 2000). The jury assessed appellant's punishment at confinement in a state jail facility for two years and a fine of $1,500.

Appellant asserts that the evidence is legally and factually insufficient to sustain the jury's verdict and that the trial court erred in overruling appellant's objection to the prosecutor's improper argument and in denying his motion for a new trial. Appellant's point of error relating to the jury argument will be sustained; the judgment will be reversed and the cause remanded to the trial court.

We will first consider appellant's fourth point of error in which he insists that the evidence is legally insufficient to support his conviction. In reviewing the legal sufficiency of

the evidence, we view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994); *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991); *Martinets v. State*, 884 S.W.2d 185, 187 (Tex. App.—Austin 1994, no pet.).

On the night of March 25, 1999, police officers Raleigh Jordan and Gregg Ford were patrolling in the "South Union" neighborhood of Houston. A car about a block ahead of them on Corder Street turned onto Scott Street without giving a turn signal. The officers used their emergency equipment and lights to signal the driver of the car to stop. The car turned from Scott Street onto the next side street and stopped. As soon as the car stopped, appellant got out of the driver's seat and glanced down at the inside of the door panel as if he had lost something. Appellant then started to walk toward Jordan and the patrol car. Jordan ordered appellant to get back in his car, but appellant kept walking toward Jordan. Jordan told appellant to place his hands on the patrol car, patted him down, and finding no weapons put appellant on the back seat of the patrol car. Ford was watching the other three occupants of appellant's car. Jordan smelled the strong distinctive odor of phencyclidine and looking toward the open door on the passenger side of appellant's car saw three cigarettes on the window controls on the armrest. Ford raked the cigarettes into a plastic bag which he gave to Jordan. The marijuana cigarettes

2

had been dipped in phencyclidine. The street name for marijuana cigarettes which have been dipped in phencyclidine is "fry sticks."[1]

Elton Mayberry, one of the passengers in appellant's car, was released at the scene when the officers determined that there were no outstanding warrants for his arrest. The other two passengers, Matthew Dimmerson and Donald Rachell, were arrested and taken to jail because the officers determined that there were outstanding traffic warrants for their arrest. Appellant was arrested for the possession of phencyclidine. An expert witness testified that the three fry sticks were marijuana cigarettes which had been soaked with phencyclidine.[2]

Viewed in the light most favorable to the prosecution, the evidence is sufficient for a rational trier of fact to find that the essential elements of the offense were proved beyond a reasonable doubt. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant urges that the evidence is factually insufficient to support his conviction. In reviewing factual sufficiency of the evidence, we view all the evidence "without the prism of 'in the light most favorable to the prosecution'"; we set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd). In performing a factual

---

[1] Jordan testified that phencyclidine "is basically what funerals use when somebody dies. It's embalming fluid they use for the dead person's body, to sterilize it, clean it out, I guess. It has a distinct odor . . . it will alert your senses, it will make your eyes water, it will give you minor headaches, or you can also become dizzy . . . . If you get it on your skin, it can ruin you."

[2] The expert also testified that "embalming fluid" was the street name for phencyclidine but that phencyclidine was not used by funeral homes as an embalming fluid.

3

sufficiency review, the courts of appeals are required to give deference to the jury verdict and examine all of the evidence impartially, setting aside the jury verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (quoting *Clewis*, 922 S.W.2d at 129). Recently, the *Clewis* standard has been reprised, "[T]he complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

We will summarize the additional evidence presented to the jury. The twenty-seven-year-old appellant testified in his own defense. He testified that he did not turn from Corder Street on to Scott Street and that he had not failed to give a turn signal before he was stopped. He testified that where he stopped just off Scott Street there were no street lights, his car windows were darkly tinted, and the dome light did not work. Further, he testified that as soon as he stopped, he got out of his car, kicked the door shut, and walked toward Officer Jordan with his hands up holding his driver's license and proof of insurance. When he did not follow Jordan's order to get back in his car, Jordan made him place his hands on the police car. Jordan then searched him and put him in the back seat of the police car. Appellant testified the officers removed the other three occupants from his car. The front seat passenger, Donald Rachell, was the last one required to get out of the car. Appellant testified that the officers searched his car

4

after the four men had been placed in the police car. After the search, when Jordan came back to the police car exhibiting the fry sticks, Rachell said the fry sticks were his. Appellant testified he had never seen the fry sticks until Jordan showed them to him, and denied possession of the phencyclidine laced marijuana cigarettes. Appellant admitted he gave the officers his brother's driver's license, but testified he told them he had picked up that license by mistake.

Matthew Dimmerson, a rear seat passenger in appellant's car, testified that before Jordan exhibited the fry sticks, he had never seen them. Dimmerson testified he saw his cousin Rachell reach over toward the driver's side of the car after appellant got out of the car—"I seen him lean over to the side and sit something down . . . I'm not sure what it was."

Elton Mayberry, the other back seat passenger in appellant's car, also testified. He was a friend of Dimmerson's and did not know appellant until appellant picked him up at a bus stop on Scott Street less than ten minutes before the police stopped appellant. Mayberry testified that appellant got out of the car, closed the door, and walked toward Jordan with his driver's license and proof of insurance in his hands. Mayberry testified that all four men were handcuffed and put in the back seat of the police car. Mayberry did not see or smell any drugs in appellant's car. After the officers determined there were no outstanding warrants for Mayberry, he was released and allowed to leave the scene.

Officers Jordan and Ford gave rebuttal testimony. Jordan testified that he did not see Rachell make any movement from the passenger's seat toward the driver's side of appellant's car where the fry sticks were found. He testified that appellant did not shut his car door and that the dome light was on. According to Jordan, Rachell did not claim the fry sticks

5

when arrested. Jordan denied that appellant told him he had picked up his brother's driver's license by mistake. Appellant, Dimmerson, and Mayberry were put in the back seat of the police car, Jordan testified, but Rachell was handcuffed to the bumper of the police car because he was too large to put in the back seat with the other men. After Mayberry was released, Rachell was then put in the back seat with Dimmerson and appellant.

Officer Ford, testifying in rebuttal, said he had no problem seeing the inside of appellant's car; the dome light was on, and he did not see Rachell reach over toward the driver's side of appellant's car. Ford recovered the fry sticks after Jordan directed his attention to them. Ford did not hear Rachell claim the fry sticks. Appellant presented his brother's driver's license for identification and said nothing about his possession of his brother's license being a mistake.

We have made a neutral review of all of the evidence, applied the factual sufficiency standard of review, and hold that the evidence is not so weak as to undermine the jury's determination of guilt or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Appellant's fifth point of error is overruled.

In his first point of error, appellant insists that the trial court erred at the guilt-innocence phase of trial by overruling his objection to the prosecutor's improper jury argument in which he said:

> Mr. Wallace also told you that Don [Rachell] admitted to Officer Jordan that they were his fry sticks. There is no other evidence to that effect. No one else said -- and Mr. Dimmerson was in the back of the patrol car at the time, he didn't testify Don admitted it. Both officers said that never happened. I submit to you, the defense has the exact same subpoena power I do. Where is Don?
>
> [Defense Counsel]: Objection, Your Honor. May we approach the bench?

6

THE COURT: No. Continue.

[Defense Counsel]: Your Honor, I would object to him --

THE COURT: Overruled.

[Prosecutor]: It's just simply not credible. Don never admitted it. It wasn't Don's, it's Tramelle's.

The State does not contend that the appellant failed to preserve error for appellate review. The record shows that the trial court and the prosecutor were well aware of the grounds for appellant's objection. *See* Tex. R. App. P. 33.1(a)(1)(A); *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); *Kelly v. State*, 903 S.W.2d 809, 811 (Tex. App.—Dallas 1995, pet. ref'd); *Jefferson v. State*, 900 S.W.2d 97, 100 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

In jury argument, the State can properly comment on a defendant's failure to call a competent and material witness who is available to testify and can argue that because of the failure to call the witness, the witness's testimony would have been unfavorable to the defendant. *See Albiar v. State*, 739 S.W.2d 360, 362-63 (Tex. Crim. App. 1987); *Carrillo v. State*, 566 S.W.2d 902, 912 (Tex. Crim. App. 1978); *Reese v. State*, 905 S.W.2d 631, 636-37 (Tex. App.—Texarkana 1995, pet. ref'd). However, such a comment is improper when the witness is not available to testify on behalf of the defendant. *See Hendricks v. State*, 640 S.W.2d 932, 937 (Tex. Crim. App. 1982). A witness who invokes his Fifth Amendment right against self-incrimination is not an available witness. *See Bush v. State*, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989).

The record shows that the witness Don Rachell referred to in the prosecutor's jury argument invoked his Fifth Amendment right against self-incrimination and did not testify. Don Rachell, having invoked his Fifth Amendment right, was not an available witness. The prosecutor's jury argument was improper, and the trial court erred in failing to promptly sustain defense counsel's objection. The State does not contend that the prosecutor's argument was proper or that the trial court's ruling was correct.[3]

The issue we must decide is whether the error committed requires reversal. On appeal, the State argues that the prosecutor's argument and the trial court's erroneous ruling were small or of no consequence and, therefore, not reversible error. Any error, defect, irregularity, or variance, other than constitutional error, that does not affect substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b). Therefore, we must determine whether the error committed affected appellant's rights substantially or whether the error should be disregarded. Appellant testified that he did not possess the fry sticks but that they were Donald Rachell's and that Rachell had claimed the fry sticks were his.

Prior to trial, the prosecutor knew that Rachell had claimed the fry sticks and that he had placed them where they were found by the officers, and that a trial judge had appointed counsel to advise Rachell whether he should testify. Rachell appeared for appellant's trial. After the parties announced ready for trial, the trial court determined that Rachell's proposed

---

[3] The State does not contend that the argument was proper and fell within the four generally accepted areas for jury argument; that is (1) summation of evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, or (4) plea for law enforcement. *See Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

8

testimony would be self-incriminating and that his appointed counsel had advised him not to testify. Rachell then informed the judge that he would exercise his Fifth Amendment right not to testify. The prosecutor knew of Rachell's decision not to testify and knew Rachell was not an available witness that the defense could call.

To determine whether improper jury argument constitutes reversible error, the Court of Criminal Appeals has adopted the same analytical method as applied by federal courts. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Three factors are to be considered. They are "(1) severity of the misconduct (the magnitude of prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Id.* The *Mosley* opinion does not give any one of the three factors greater weight than the other two factors.

We turn now to the application of the three factors approved in *Mosley*. First, we decide the severity of the misconduct (the magnitude of prejudicial effect of the prosecutor's remarks). Here, the prosecutor condemned the defense for not calling a witness who was not an available witness. The prosecutor knew or should have known that his argument was flagrantly improper. It was not a mere inadvertent comment. It appears to have been purposely made to unfairly undermine appellant's defense. The obvious intent of the prosecutor was to make the jury believe appellant had lied to them and to bolster the testimony of the State's witnesses. The comment, intentionally made, was unfair; it cannot be condoned. The prosecutor's argument was calculated to harm appellant.

9

Second, we consider the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge). A trial judge's curative instructions to disregard a prosecutor's improper argument will generally render the prosecutor's argument harmless. *See, e.g., Nenno v. State*, 970 S.W.2d 549, 565 (Tex. Crim. App. 1998); *Ransom v. State*, 920 S.W.2d 288,.303 (Tex. Crim. App. 1994); *United States v. Apodaca*, 666 F. 2d 89, 97 (5th Cir. 1982). In this case, there was no cautionary instruction. Not only was no cautionary instruction given to the jury, the trial court's curt ruling and instruction for the prosecutor to continue gave the trial court's stamp of approval to the indefensible argument. This was particularly unfortunate when the trial court was well aware that Rachell was an unavailable witness who had invoked his Fifth Amendment privilege. The jury was unaware that Rachell did not testify because he had exercised his Fifth Amendment right. Taking into account the trial court's approval of the prosecutor's argument, the jury could certainly infer that Rachell's testimony would have branded appellant a liar willing to give perjurious testimony. The court's improper ruling and the absence of a curative jury instruction were palpably harmful to appellant.

Third, we address the certainty of conviction absent the misconduct (the strength of the evidence of conviction). Although we have decided the evidence is legally and factually sufficient to support the jury's verdict, the evidence of appellant's guilt is not overwhelming. Determining whether or not there was a certainty of conviction absent, the misconduct is particularly difficult in this case. The prosecutor's misconduct and the trial court's ruling added strength to the State's case and detracted from the strength of the defense. It is difficult to gauge the importance the jury may have placed on the absence of Rachell's testimony after the

10

prosecutor's improper jury argument and the trial court's erroneous ruling allowed the jury to consider the absence of Rachell's testimony.

When all three of the factors used to determine harmless error in jury argument are considered together, we cannot say the rights of appellant were not substantially affected. The misconduct of the prosecutor condoned by the trial court constitutes error that cannot be disregarded. Appellant's first point of error is sustained.

In view of our disposition of appellant's first point of error, we need not consider appellant's second and third points of error that the trial court erred in refusing to grant a new trial.

The judgment is reversed and the cause is remanded to the trial court.

 

_____

Carl E. F. Dally, Justice

Before Justices Jones, Kidd and Dally[*]

Reversed and Remanded

Filed:   October 5, 2000

Do Not Publish

Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).