# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00341-CR

**Tina E. Hargrove, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
## NO. 06-813-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

On June 15, 2006, a grand jury returned an indictment charging appellant Tina E. Hargrove with intoxication assault, a third-degree felony. *See* Tex. Penal Code Ann. § 49.07 (West Supp. 2007). The indictment included a deadly-weapon allegation. On May 16, 2006, a jury found Hargrove guilty of intoxication assault and found the deadly-weapon allegation to be true. The jury assessed Hargrove's punishment at five years' and six months' confinement and a $5,000 fine. On appeal, Hargrove argues (1) that the trial court erred in submitting a charge which permitted the jury to convict her of intoxication assault by reason of intoxication by ingestion of a "drug" or "dangerous drug" and (2) that the trial court erred in failing to grant her motion for mistrial after the State asked an improper question on cross-examination. Because we have determined that the trial court did not err in submitting the jury charge or in denying the motion for mistrial, we will affirm the judgment of the trial court.

## BACKGROUND

The accident giving rise to Hargrove's prosecution occurred in Williamson County, shortly after midnight on November 6, 2005. The victim, Phyllis Henkelman, was driving home from her daughter's wedding reception. She was following her husband, Alan Henkelman, north on Parmer Lane near the intersection of Parmer and Brushy Creek Boulevard. Susan Brown, a friend of the Henkelmans, was following behind Phyllis Henkelman's vehicle. At the same time, Hargrove was driving south in the northbound lanes of Parmer Lane, a four-lane divided highway separated by a grassy median. Alan Henkelman testified that Hargrove passed his vehicle "close to [his] door, almost like passing on a two-lane country road but closer." He then looked in his rearview mirror and saw his wife's headlights go out as Hargrove's vehicle struck Phyllis Henkelman's vehicle head-on. Susan Brown's vehicle was also damaged by the resulting debris.

Emergency personnel transported both Hargrove and Phyllis Henkelman to Brackenridge Hospital by star-flight, where Henkelman was diagnosed with fractures to her femur, pelvis, elbow, and toe. As a result of her injuries, Henkelman walked with a limp at the time of trial and suffers from protracted loss of the full range of motion in her elbow. Henkelman's treating physician at Brackenridge, Dr. David Laverty, testified that her femur fracture carried a long-term risk of blood clots and possible death.

Dr. Laverty, who also served as Hargrove's treating physician at Brackenridge, formed the opinion that Hargrove was intoxicated, testifying that he based this opinion on the odor of alcoholic beverages emanating from her and her inability to clearly understand and answer his questions.

Department of Public Safety Trooper Rebecca Gentry observed and interacted with Hargrove at the collision scene but did not perform any standard field sobriety tests because Hargrove was injured. After interacting with Hargrove again at Brackenridge Hospital, Gentry formed the opinion that Hargrove was intoxicated and put her under arrest for intoxication assault. Gentry testified that she formed the opinion that Hargrove was intoxicated based on her observations of the accident scene, the odor of alcoholic beverages coming from Hargrove's breath, and Hargrove's admission to Gentry that she had consumed alcoholic beverages prior to the accident. Gentry's observations of the accident scene included the fact that Hargrove had been traveling on the wrong side of the road, the lack of skid marks or other signs of braking, and the fact that Hargrove had already narrowly missed Alan Henkelman's vehicle before colliding with Phyllis Henkelman's vehicle.

Hospital personnel drew a routine sample of Hargrove's blood shortly after her arrival at 1:55 a.m., which showed a blood-alcohol concentration of 0.277, over three times the legal limit of 0.08. A second blood sample, drawn at approximately 2:30 a.m., was negative for the presence of opiates, barbiturates, cannabinoids, amphetamines, cocaine, benzodiazepines, and phencyclidine.

After the routine sample of Hargrove's blood was taken, Gentry requested a blood sample for law-enforcement purposes. This sample was taken at 3:20 a.m. and showed a blood-alcohol concentration of 0.21. James Burris, a forensic scientist with the Department of Public Safety, testified that an average alcoholic drink converts to a blood-alcohol concentration of approximately 0.02 and that the average rate of elimination of alcohol in the blood is 0.015 per hour.

3

On direct examination, Hargrove testified that she remembered drinking beer on the evening prior to the accident but could not remember the amount. On cross-examination, she testified, "I believe I had a few beers." When further questioned about the number of beers she had consumed, Hargrove answered, "I would say maybe three."[1]

The jury found Hargrove guilty of intoxication assault and further found the deadly weapon allegation to be true. This appeal followed. Hargrove's issues on appeal are (1) that the trial court erred in submitting a jury charge that permitted a conviction by reason of intoxication through ingestion of a "drug" or "dangerous drug," and (2) that the trial court erred in denying her request for a mistrial following an improper question by the State.

## STANDARD OF REVIEW

In reviewing a jury charge, we must first determine whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If error is found, it must then be analyzed for harm. *Id*. If the error was properly preserved, a reversal is required if "some harm" is shown. *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). If the error was not properly preserved, reversal is only required in the event of egregious harm. *Id*. Egregious harm exists if "a reviewing court finds that the case for conviction or punishment was actually made clearly and significantly more persuasive by the error." *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).

---

[1] Hargrove testified that she had been under a great deal of stress because her mother had been ill and was removed from life support on November 4, 2005. The accident occurred shortly after midnight on November 6, 2005.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). Mistrial is only appropriate for "a narrow class of highly prejudicial and incurable errors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). The asking of an improper question will seldom call for a mistrial because in most cases, any harm can be cured by an instruction to disregard. *Id*.

## DISCUSSION

*Jury Charge*

Hargrove argues that the jury charge should not have included language allowing the jury to convict her of intoxication assault by reason of intoxication through ingestion of a "drug" or "dangerous drug" because there was no evidence that would allow the jury to believe she had ingested any drug or dangerous drug at the time of the accident.

The charge submitted to the jury defined "intoxicated" as:

(1)    not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(2)    having an alcohol concentration of 0.08 or more.

In the application paragraph, the charge stated that Hargrove should be found guilty if she caused serious bodily injury while operating a motor vehicle in a public place while intoxicated, namely "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a drug, a dangerous drug, a combination of two or more of those substances,

5

or any other substances into the body or having an alcohol concentration of 0.08 or more." The jury charge also included the legal definitions of "drug" and "dangerous drug."

At trial, Hargrove objected to including the definitions of "controlled substance" and "drug." The State consented to the deletion of any references to controlled substances, stating that there was no evidence of use of a controlled substance. The State maintained that Hargrove's medical records, showing that she had been prescribed certain substances prior to the accident, were sufficient to warrant the references to drugs and dangerous drugs in the jury charge. Hargrove did not specifically object to the inclusion of the legal definition of "dangerous drug" or to any use of "drug" in the application paragraph of the charge.

Hargrove's medical records, which were admitted into evidence, reflected that Hargrove had been prescribed both Vicodin and prednisone, and that her prescription for prednisone called for daily doses. While prednisone, a prescription drug, falls under the legal definition of a "dangerous drug," Vicodin does not. Hydrocodone, the generic name for Vicodin, is classified as a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.104(a)(4) (West 2003). The legal definition of a "dangerous drug" is:

> a device or a drug that is unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act). The term includes a device or a drug that bears or is required to bear the legend:
>
> (A) "Caution: federal law prohibits dispensing without prescription" or "Rx only" or another legend that complies with federal law; or
>
> (B) "Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian."

6

*Id*. § 483.001(2). Because hydrocodone is included in penalty group III of the Texas Controlled Substances Act, it is excluded from the definition of a "dangerous drug." *See id*. § 481.104(a)(4). Therefore, while Hargrove's Vicodin prescription may suggest ingestion of a "drug,"[2] only the prednisone prescription suggests ingestion of a "dangerous drug." However, there was no testimony that Hargrove had taken either substance on the day of the accident.[3]

Regardless of whether the evidence is sufficient to show that Hargrove had taken any "drug" or "dangerous drug" prior to the accident, we note that the jury charge tracks the language of the indictment and the statutory definition of intoxication. *See* Tex. Penal Code Ann. § 49.01 (West 2003). Use of a statutory definition in a jury charge is generally not error. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that jury charge tracking

---

[2] The definition of "drug" in the jury charge tracks the definition found in the Texas Controlled Substances Act, where "drug" is defined as "a substance, other than a device or a component, part, or accessory of a device, that is:

(A) recognized as a drug in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, official National Formulary, or a supplement to either pharmacopoeia or the formulary;
(B) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or animals;
(C) intended to affect the structure or function of the body of man or animals but is not food; or
(D) intended for use as a component of a substance described by Paragraph (A), (B), or (C).

Tex. Health & Safety Code Ann. § 481.002(16) (West Supp. 2007).

[3] Hargrove asserts that her hospital blood sample affirmatively shows that she had no "drug" or "dangerous drug" in her bloodstream at the time of the accident. However, Hargrove's blood sample was only tested for the presence of opiates, barbiturates, cannabinoids, amphetamines, cocaine, benzodiazepines, and phencyclidine. There was no testimony or other evidence reflecting that Hargrove's blood test definitively ruled out the presence of Vicodin or prednisone in her system.

7

language of particular statute is proper charge on statutory issue because "[f]ollowing the law as it is set out by the Texas Legislature will not be deemed error on the part of the trial judge."). This Court has rejected a similar challenge to a jury charge that included a definition of intoxication that "track[ed] the allegations contained in the information and roughly conform[ed] with the statutory definition." *See Erickson v. State*, 13 S.W.3d 850, 851 (Tex. App.—Austin 2000, pet ref'd). In *Erickson*, there was no evidence that the appellant had consumed any intoxicant other than alcohol, but a jury charge was upheld that instructed the jury that a person is intoxicated within the meaning of the law "when such person does not have the normal use of his physical or mental faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of these substances into the body." *Id*. This Court held that where it is clear that the State urged the jury to convict on the basis of a finding that the appellant was intoxicated by the use of alcohol alone, a jury charge tracking the statutory definition of "intoxication" does not constitute reversible error. *Id*. at 852.

In the present case, the testimony, evidence, and arguments of counsel revolved around the theory that Hargrove was intoxicated due to the consumption of alcohol. The State introduced blood tests into evidence establishing that Hargrove had a blood-alcohol concentration of 0.277 approximately two hours after the accident and 0.21 approximately three and a half hours after the accident. In closing argument, the State emphasized the blood-test results, stating, "[W]e have not one, but two levels clearly above .08 . . . so really to start with the end in mind, we have the best evidence twice, and everything else is helpful." The only evidence suggesting intoxication by any means other than the consumption of alcohol was the portion of Hargrove's medical records

8

showing medications she had been prescribed prior to the accident. No testimony was elicited regarding these prescriptions. As in *Erickson*, the State clearly urged the jury to convict Hargrove on the basis of a finding that she was intoxicated by the use of alcohol alone.

Because the jury charge was not improper in tracking the statutory definition of "intoxication," we hold that the trial court did not err in allowing references to a "drug" or "dangerous drug" to appear in the charge. Hargrove's first issue is overruled.

*Motion for Mistrial*

Hargrove argues that the trial court should have granted her motion for mistrial when the State asked her a question on cross-examination introducing the idea that she had consumed twelve beers on the night of the accident.

The motion for mistrial was based on the following exchange during the State's cross-examination of Hargrove:

> Q:        Now, you've heard the medical evidence both from the hospital and the DPS that your levels were roughly three times the legal limit. You can't contest those at all, can you?
>
> A:        No, I can't.
>
> Q:        And you realize that based on Mr. Burris's testimony that to be at that level that you had more than a 12-pack. Is that fair?
>
> Counsel:    Your Honor, I need to object to the question. I'm not sure that that's what Mr. Burris's testimony was. I think that's assuming facts not in evidence.
>
> Q:        He testified—
>
> Court:    Objection is overruled.

9

Q:         So more than a 12-pack to get you up into this .2-something range?

A:         I wouldn't know that.

Q:         Okay. Well, if he testified—he's—I mean, he's the expert in that. Can you disagree with his conclusion at all that if it's .02 per drink that to get to a .24—

A:         I'm not a doctor—

Counsel:   Again, I need to renew my objection, Judge. There was no testimony regarding—

Court:     All right.

At this point in the proceedings, the trial court conducted a bench conference regarding the objection. When the bench conference concluded, the trial court instructed the jury, "I'm going to sustain an objection to the last question. Please disregard it, and you'll recall the testimony from Mr. Burris." Hargrove immediately requested a mistrial, which was denied.

Burris testified regarding the effects of alcoholic beverages on blood-alcohol concentration, stating, "Well, roughly an average drink would be about a .02 . . . . And that's a very rough estimate." When asked how many drinks would be required to cause a blood-alcohol concentration of .21, the level found in Hargrove's 3:20 a.m. blood test, Burris stated that "it would really have to depend on a lot of factors," including the individual's weight. Burris also testified that a small person, weighing 110 or 115 pounds, could not get to a blood-alcohol concentration of .21 by consuming only two average-sized drinks.[4]

---

[4] The record reflects that Hargrove weighed approximately 115 pounds.

10

In deciding to sustain the objection, the trial court noted that Burris's testimony regarding the .02 blood-alcohol concentration per drink applied only to an average-sized person, stating, "I'm not comfortable with you saying a .02 in a person when she's this size."

Hargrove argues that the error arising from the State's improper question was impossible to cure by an instruction to disregard because before the instruction was given, the State was able to ask the improper question twice, as well as explain how the expert testimony could lead to the assumption that Hargrove had consumed twelve beers prior to the accident.

The asking of an improper question, by itself, will seldom call for a mistrial because in most cases, any harm from such a question may be cured by an instruction to disregard the question. *Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994). An instruction to disregard is sufficient to cure the error or render it harmless, "except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds." *White v. State*, 444 S.W.2d 921, 922 (Tex. Crim. App. 1969); *see also Gonzales v. State*, 685 S.W.2d 47, 49 (Tex. Crim. App. 1985) (holding that question introducing evidence of prior criminal charge without showing of final conviction could be cured by instruction to disregard).

The fact that the improper question was repeated does not lead to the conclusion that the jury would find it impossible to disregard. An instruction to disregard can properly cure error resulting from more than one improper question or remark. *See Hendricks v. State*, 640 S.W.2d 932, 939 (Tex. Crim. App. 1982) (holding that single instruction to disregard numerous sidebar remarks by prosecutor removed force of improper statements and enabled appellant to receive fair trial). The

11

State's question appears to have been based on calculations using information from Burris's expert testimony, rather than an attempt to inflame the minds of the jury. Furthermore, in light of the evidence of Hargrove's blood-alcohol level after the accident, we do not find the State's isolated series of questions suggesting that Hargrove drank twelve beers prior to the accident to be of the "narrow class of highly prejudicial and incurable errors" necessary for a mistrial. *Wood*, 18 S.W.3d at 648.

Hargrove also argues that the trial court's instruction to disregard was so vague that it could have been interpreted by a reasonable juror as an instruction to disregard the objection, rather than the improper question. However, the jurors heard the instruction after first hearing the trial court overrule defense counsel's initial objection, allowing the State to continue. The jury then heard defense counsel renew his objection on the same grounds, to which the trial court responded, "She's already answered the question, but don't ask any more questions about—on that line," and subsequently called a bench conference. After the bench conference, the trial court announced, "I'm going to sustain an objection to the last question. Please disregard it, and you'll recall the testimony from Mr. Burris." The State then began a completely new line of questioning. In context, the only reasonable conclusion that a juror could draw is that the trial court considered the *question* improper, rather than the objection, and that the instruction to disregard applied specifically to the improper question. Juries are presumed to have complied with a trial court's instruction to disregard. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) (holding that in absence of evidence that jury was actually confused, we assume jury would follow court's instructions as given). As a result, we will assume that the jury

12

followed the trial court's instructions to disregard the State's question after Hargrove's objection to such question was sustained.

Because the trial court did not abuse its discretion in denying Hargrove's request for a mistrial, her second issue is overruled.

## CONCLUSION

Because we hold that the trial court did not err in submitting the jury charge or in overruling Hargrove's request for a mistrial, we affirm the trial court's judgment.

_____

Diane Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   April 3, 2008

Do Not Publish

13