

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00097-CR
_____

WHITNEY LADELL BLAKE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 24132

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Whitney Ladell Blake was seen emerging both from a vacant house next door to the residence of Johnny William Piper, IV, and from a shed behind that vacant house. When officers arrived at the scene, Blake told them he was Tracey Stone. As officers investigated, Blake walked away nonchalantly and then started running. [1] Blake appeals from his resulting convictions for burglary of a building and evading arrest or detention. [2] *See* TEX. PENAL CODE ANN. § 30.02 (West 2011), § 38.04 (West Supp. 2011). [3]

We affirm the judgment of the trial court based on three conclusions: (1) the jury charge did not permit a nonunanimous verdict, because the record contains evidence of only one "building"; (2) the evidence of burglary is sufficient; and (3) the evidence of evading arrest is sufficient.

---

[1] A police officer caught Blake "a couple hundred yards" from the scene.

[2] Blake had previously been convicted of evading arrest or detention, which increased the offense to a state jail felony. *See* TEX. PENAL CODE ANN. § 38.04(b). The punishment range for both of the instant offenses was enhanced to the range of a second degree felony by two prior felony convictions. *See* Act of May 28, 1995, 74th Leg., R.S., ch. 318, § 1, 1995 Tex. Gen. Laws 2735, 2763 (amended 2011) (current version at TEX. PENAL CODE ANN. § 12.42 (West Supp. 2011)); *see also* TEX. PENAL CODE ANN. § 12.46 (West 2011). A jury found Blake guilty of both counts, Blake elected to have the trial court assess punishment, and the trial court sentenced Blake to ten years' confinement on both counts.

[3] Section 38.04 has been amended since the offense in this case was committed. Because the amendments are not relevant to this appeal, we reference the current section.

*(1)*     *The Jury Charge Did Not Permit a Nonunanimous Verdict, Because the Record Contains Evidence of Only One "Building"*

Blake claims that the jury charge was erroneous—violating Article V, § 13, of the Texas Constitution and Article 36.29(a) of the Texas Code of Criminal Procedure—in failing to correctly instruct the jury that the verdict must be unanimous[4] and that the error resulted in egregious harm.[5]

The State alleged Blake, "without the effective consent of Dana Vandergriff, the owner thereof, enter[ed] a building not then and there open to the public with intent to commit theft." The State, though, introduced evidence that Blake entered two structures owned by Vandergriff, the vacant house and the shed. Blake argues the jury charge permitted a nonunanimous verdict because the charge did not require the jury to decide which structure Blake entered.[6] Because entry into two different buildings are separate offenses even when both buildings are owned by the same person,[7] Blake argues that the trial court erred in failing to instruct the jury it must be unanimous concerning which structure Blake entered when committing the offense.

---

[4]Under the Texas Constitution, jury unanimity is required in felony cases, and, under the Texas Code of Criminal Procedure, unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *see* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2011). Jury unanimity is required on the essential elements of the offense, but is not required "when the jury has the option of choosing between alternative modes of commission." *Pizzo v. State*, 235 S.W.3d 711, 715 (Tex. Crim. App. 2007).

[5]*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

[6]Blake alternatively argues, in his first issue, that the shed failed to qualify as a building.

[7]Jury unanimity requires evaluating whether the statute defining the offense created multiple, separate offenses, or only created a single offense with different methods or means of commission. *Pizzo*, 235 S.W.3d at 715. The State argues the unit of prosecution for burglary is each owner of the building. Texas law, though, is well established that "the allowable unit of prosecution in a burglary is the unlawful entry." *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (determining allowable unit of prosecution in double jeopardy context); *see Davis v. State*, 313

3

Under the Texas Penal Code, a building is "any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use." TEX. PENAL CODE ANN. § 30.01(2) (West 2011). The jury charge did not contain this, or any, definition of building. Our review of the record did not discover any mention of the requirement that the structure be enclosed to qualify as a building. At trial, the State argued:

> Building is a structure. It can be a habitation. It doesn't have to be a home but is a structure intended for some use or purpose. That can be a structure to live in. That can be a structure used as a storage shed.

The State argued to the jury that both the shed and the house qualified as buildings. The defense did not object at trial to either the State's operating definition of a building[8] or to the State's argument that both structures qualified as buildings.

The first structure in this case was a vacant house. Although Vandergriff testified she had lived in the house not four years previous, the record established that the house was in disrepair. At the time of the burglary, the windows had been "busted out," the back door had been kicked in,

---

S.W.3d 317 (Tex. Crim. App. 2010) ("gravamen of a burglary is the entry. . ." " and noting "the existence of multiple victims, or multiple underlying offenses connected with the entry, does not convert a single unlawful entry into multiple burglaries"); *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008) (jury unanimity and double jeopardy issues are intertwined and address same basic question). The State cites *Davis* in support of its argument that only one burglary occurred because there was only one victim. *Davis* stated (1) there would still be only one capital murder, even if multiple underlying burglaries had occurred, and (2) "the existence of multiple victims, or multiple underlying offenses connected with the entry, does not convert a single unlawful entry into multiple burglaries." *Id*. ("gravamen of burglary is the entry"); *see Byrd v. State*, 336 S.W.3d 242, 251 n.43 (Tex. Crim. App. 2011) ("The gravamen of the offense normally dictates the number of allowable units of prosecution."). Because each unit of prosecution is a separate offense, s*ee Cosio v. State*, No. PD-1435-10, 2011 Tex. Crim. App. LEXIS 1259 (Tex. Crim. App. Sept. 14, 2011), unlawful entry of two buildings, even if they had same owner, would be two separate offenses.

[8]Blake does not argue the jury charge's failure to include the definition of building resulted in egregious harm.

the wiring and plumbing had been removed, and Vandergriff no longer bothered to lock the premises. A neighbor testified that the property had become infested with snakes and estimated that he had killed forty snakes entering his yard from the property in the past year.

The second structure in this case was a shed located behind the vacant house. The defense describes the shed on appeal as "ramshackle." The State, during closing argument, colorfully admitted that "this shed ain't a palace" and that "[i]t looks like it's held together with spit and chicken wire." Various photographs of the shed were introduced into evidence. The shed appears to be a small, tin-roofed pavilion to which walls were added by attaching sheets of plywood to the columns supporting the roof. Three sides of the pavilion were completely enclosed in this manner. Slightly more than half of the remaining side was enclosed, leaving an opening approximately three to four feet wide serving as a means of access into the shed. There is no testimony in the record that this opening ever had a door. Further, there is no indication in any of the photographs that a door had been attached. The plywood does not have any holes or other marks indicating a door had previously been attached.

The Texas Court of Criminal Appeals has emphasized that a structure must be enclosed for it to qualify as a building. *St. Julian v. State*, 874 S.W.2d 669, 670 (Tex. Crim. App. 1994); *Day v. State*, 534 S.W.2d 681, 683 (Tex. Crim. App. 1976); *Cf. Salazar v. State*, 284 S.W.3d 874, 879 (Tex. Crim. App. 2009) (citing *St. Julian* with approval, but noting Texas Penal Code's definition

5

for habitation does not require structure to be enclosed). In *Day*[9] and *St. Julian*,[10] the Texas Court of Criminal Appeals held that structures which were not designed to prevent public access were not enclosed.

Although the house was no longer secured against public access, the house had been designed and had previously been in a condition to prevent public access. Texas courts have uniformly held that structures designed to be enclosed do not lose their status as enclosed buildings when they fall into disrepair. *See Ellett v. State*, 607 S.W.2d 545, 549 (Tex. Crim. App. 1980) (distinguishing *Day* and holding unoccupied hotel, with some windows broken and others boarded up, to be a building); *Ross v. State*, 800 S.W.2d 262 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (business building with one or more doors removed and lying on ground when burglars entered); *Soliz v. State*, 794 S.W.2d 110, 112 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (chemical plant, closed for six years and missing its doors and windows, was enclosed). Despite

---

[9]In *Day*, the structure consisted of a shed intended to shelter lumber and other building materials from the weather. *See Day*, 534 S.W.2d at 684. The shed had three large doorways, which were not capable of being closed. *Id.*

[10]In *St. Julian*, the structure in question was a structure containing residential mailboxes attached to an apartment complex. The Texas Court of Criminal Appeals described the mailroom as follows:

> The mailroom in the instant case was constructed of brick and had a ceiling, a floor and four walls. Panels of individual mailboxes were mounted on three of the walls. The mailboxes themselves were individual enclosed units. Attached to the fourth wall was a bulletin board and shelves. An open passageway in the center of the fourth wall allowed free access to the mailroom. This was the only entry into the mailroom. At the time of the instant offenses[,] a person could walk off the street and through an open passageway and archway right into the mailroom. The mailroom was part of a larger two-story brick structure which contained apartment units and a clubhouse area, all of which were connected by open passageways on the outside.

*St. Julian*, 874 S.W.2d at 669–70.

having fallen into disrepair, the house was enclosed and qualified as a building under the burglary statute.

The shed, though, was apparently never designed to prevent public access. Similar to *St. Julian*, the opening was designed to remain open at all times. While a building need not be resistant to being looked into[11] or even impervious to entry,[12] the building must take some measures to preclude entry by ordinary means. Similar to *Day* and *St. Julian*, the shed in this case contains an opening designed to permit a person to walk into the structure at any time. The shed in this case is not an enclosed structure and thus is not a "building" under the statute.

The only structure owned by Vandergriff that met the legal definition of a building was the vacant house. Thus, the State introduced evidence of only one offense—burglary of the vacant house. This case does not present a jury unanimity issue, as urged by Blake.[13] To the extent the State's argument could be interpreted as arguing Blake committed burglary by entering the shed,[14]

---

[11]*See Craner v. State*, 778 S.W.2d 144, 146 (Tex. App.—Texarkana 1989, no pet.) (structure enclosed by wooden slats on one and a half sides and solid walls on two and a half sides was enclosed structure).

[12]*See Gilliam v. State*, 746 S.W.2d 323, 325 (Tex. App.—Eastland 1988, no pet.) (boathouse enclosed structure even though entry could be gained by swimming under door, which did not extend into water); *De Albuquerque v. State*, 712 S.W.2d 809, 812 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (booth at airport terminal enclosed building despite space between plexiglass panelling and roof).

[13]"To discern what a jury must be unanimous about, appellate courts examine the statute defining the offense to determine whether the Legislature created multiple, separate offenses, or a single offense with different methods or means of commission." *Pizzo*, 235 S.W.3d at 714–15; *see Leza v. State*, 351 S.W.3d 344, 356 (Tex. Crim. App. 2011) (question of legislative intent behind penal provision). Because the issue of unanimity is one of legislative intent as determined by examining the statute defining the offense, the possible, but unassigned, jury charge error in failing to define "building" does not affect our unanimity analysis.

[14]The State argued at closing:

7

this alleged error[15] urged by Blake is not one in the jury charge,[16] but rather in the closing argument, which has not been preserved[17] for appellate review.

*(2)     The Evidence of Burglary Is Sufficient*

Blake also argues that the evidence is insufficient to support the jury's verdict of guilt for burglary.   At trial, Blake testified he was merely "scavenging," admitted that he entered the shed, and denied that he entered the house.

> Building is a structure.   It can be a habitation.   It doesn't have to be a home but is a structure intended for some use or purpose.   That can be a structure to live in.   That can be a structure used as a storage shed.
>
>       . . . .
>
> And make no mistake, he did go inside both structures in this case.   You heard Mr. Piper testify that he saw him coming out of the house.   He testified that he saw him coming out of the shed.   After cross-examination when I went back to redirect, I asked him point blank are you absolutely certain you saw him coming out of the house, and he said yes.   And I asked him are you absolutely certain you saw him coming out of the shed.   And he also answered yes.   The defendant made entry into both of these structures.

[15]The State argues that storage sheds are not considered separate buildings for the purposes of the burglary statute. The State cites *Leal v. State*, 82 S.W.3d 84, 88 (Tex. App.—San Antonio 2002, pet ref'd), which held a search of a storage shed is normally included in the scope of a warrant authorizing the search of a main residence and its premises. Although *Leal* is clearly distinguishable, it is not necessary for us to decide this issue because the shed in this case does not qualify as an enclosed structure.   We leave this question for another day.

[16]We do not review for egregious harm unless we first find error in the jury charge.  *Taylor v. State*, 332 S.W.3d 483, 489 n.12 (Tex. Crim. App. 2011); *Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998).   Because we have determined the jury charge did not contain the error complained of (jury unanimity), our *Almanza* analysis is concluded.

[17]Unpreserved jury charge error is reviewed for egregious harm.  *Almanza*, 686 S.W.2d 157.   Any improper argument, though, must be preserved for appellate review by a timely, specific objection in the trial court.  *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (following rule announced in *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)); *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (reaffirming rule announced in *Cockrell*, 933 S.W.2d at 89); *see also Anderson v. State*, 932 S.W.2d 502, 507 (Tex. Crim. App. 1996) (improper argument error cannot be challenged under pretext of being jury charge error).

The elements of burglary of a building are (A) a person, (B) without the effective consent of the owner, (C) entering a building not then open to the public, (D) having intent to commit a felony, theft, or assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). Although the jury charge failed to define "building," we evaluate the sufficiency of the evidence based on the hypothetically correct jury charge, which would include such a definition. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Thus, the hypothetically correct jury charge would have defined a building as "any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use." TEX. PENAL CODE ANN. § 30.01(2). Blake argues there is insufficient evidence that he entered the house and insufficient evidence that he had the intent to commit theft.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v.*

9

*State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Blake argues that the evidence is insufficient to establish that he entered the vacant house. Blake testified at trial that he did not enter the vacant house. Vandergriff testified she did not know whether anything was taken out of the house on the date in question.[18] Although Blake acknowledges that Piper testified he saw Blake exit the vacant house, Blake argues Piper could have merely seen him "going up to the doorway but not entering." Blake contends Piper could have also mistaken Blake going around the corner of the house for exiting the back door. Although he admitted he could not tell whether Blake was carrying anything, Piper agreed "there's no doubt [he] saw [Blake] coming out of the back of the house" and that he was "certain [Blake] came out of the house." The jury was entitled to believe Piper's testimony and to disbelieve Blake's denial that he entered the house. It is a reasonable deduction that, if Blake was seen exiting the house, he must have entered the house. There is sufficient evidence that Blake entered the vacant house.

Blake also claims the evidence is insufficient that he had the necessary intent to commit theft. Blake testified he was "scavenging" discarded property and did not believe he was doing anything wrong. Blake testified he was not attempting to hide and testified he even waved to

---

[18]Vandergriff testified she inherited the vacant house from her father, who had used it for rental income. Vandergriff testified she lived in the house "about four years ago," but the house has been vacant since. Vandergriff testified she uses the vacant house as a "storage building" for various items of property including "things from [her father's] office, paperwork and just things of my father's when they moved his stuff out of his house."

people passing the house. Blake notes that the offense was committed in broad daylight, notes Officer Curtis Graham testified that Blake had a "stunned look on his face" and "was just kind of curious on what I was doing there" and argues that if Blake had wanted to steal he would not have gone to a trashed, abandoned home. Blake admitted he provided a false name and then later fled the scene, but claimed these actions were the result of being on parole rather than evidence that he intended to commit theft.

The State, though, presented sufficient circumstantial evidence for the jury to conclude an intent to commit theft. When the police arrived at the scene, Blake was holding a pair of wire cutters and a piece of electrical conduit or "old junction box." Blake had a number of screwdrivers and pliers on his person. Blake admitted at trial that he had taken some aluminum cans from the shed. The act of providing a false name and fleeing the scene could have also resulted from a consciousness of guilt. Whether the acts were the result of fear of police interactions based on Blake's status as a parolee or based on a consciousness of guilt is an issue for the jury. A rational juror could have concluded Blake provided a false name and then later fled because he knew he was committing theft.

A rational juror could have found all the essential elements of burglary beyond a reasonable doubt. The evidence is sufficient.

*(3)*     *The Evidence of Evading Arrest Is Sufficient*

Blake also argues that the evidence is insufficient to support his conviction for evading

11

detention. A person commits the offense of evading detention if he or she intentionally flees from a person he or she knows is a peace officer attempting lawfully to arrest or detain him or her. *See* TEX. PENAL CODE ANN. § 38.04(a).[19] Both Officer Graham and Piper testified Blake first nonchalantly walked away from the scene and then ran from the police. Graham testified he caught Blake "a couple hundred yards" from the scene. Graham testified he had asked Blake to "stay with Officer Deere while I checked the area." Blake argues the police officers lacked reasonable suspicion to detain him and, therefore, were not attempting to lawfully detain him.

A police officer may lawfully detain a person if the police officer has specific, articulable facts which create reasonable suspicion that the person is engaging in, or is about to engage in, criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). This standard is an objective one that disregards the actual subjective intent or motive of the detaining officer and looks, instead, to whether there was an objective justification for the detention. *Elias*, 339 S.W.3d at 674.

Blake argues, similar to *Cook v. State*, 1 S.W.3d 722, 726 (Tex. App.—El Paso 1999, no pet.), his mere presence at the scene was insufficient to create reasonable suspicion. In *Cook*, a police officer saw two people standing close together conducting what the officer believed was a drug deal. *Id*. One of the persons had a hand held out, which was covered by "a white kleenex or baggy" and was "flipping through something with his thumb as if he were counting something and

---

[19]Blake had previously been convicted of evading detention, which increased the evading detention count to a state jail felony. *See* TEX. PENAL CODE ANN. § 38.04(b).

showing it." *Id*. at 725.   The El Paso Court of Appeals held mere presence in a high-crime area, by itself, was insufficient to create reasonable suspicion.   *Id*. at 726.   Because the police officer did not observe what was in appellant's hand, the court concluded the police officer lacked reasonable suspicion.   *Id*.

This case is distinguishable from *Cook*.   In this case, the police officers had specific, articulable facts that some form of criminal activity was occurring.   The police officers had been dispatched to the vacant house based on a report that someone was "possibly breaking into a building behind a house."[20]   When they arrived at the scene, Blake, who met the general description of the alleged actor, was present with a pair of wire clippers in his hand and also holding a piece of electrical conduit or an old junction box.   While the dispatch may have been the only evidence that burglary had occurred,[21] the police officers were not required to have reasonable suspicion of burglary, but rather merely reasonable suspicion of criminal activity.   The officers had reasonable suspicion that theft may have been occurring.   The fact that Blake was found on a lot not belonging to him, in possession of property not belonging to him, is a sufficiently specific, articulable fact that some form of criminal activity was occurring.   A rational juror could have concluded that officers were lawful in attempting to detain Blake.   The evidence is sufficient that Blake committed the offense of evading detention.

---

[20]The record does not indicate whether the police officers knew the report was from a private citizen who had provided his name to the police.

[21]There is no indication in the record that the police officers had yet taken a statement from Piper.

For the reasons stated, we affirm.

Josh R. Morriss, III
Chief Justice

Date Submitted:     January 4, 2012
Date Decided:      February 2, 2012

Do Not Publish